Viswanath **AKELLA** and, **Gayathri Akella, on behalf of themselves and all those similarly situated, John Doe and Robert Doe, Plaintiffs,**

v.

**MICHIGAN DEPARTMENT OF STATE POLICE and State Police Col. Michael D. Robinson, in his official capacity, jointly and severally, Defendants.**

No. 98–CV–75048–DT.

United States District Court, E.D. Michigan, Southern Division.

Aug. 10, 1999.

Douglas R. Mullkoff, Ann Arbor, Michael J. Steinberg, Detroit, MI, for plaintiff.

Margaret Nelson, Kenneth M. Ross, Lansing, MI, for defendant.

## *OPINION*

DUGGAN, District Judge.

Plaintiffs bring this action challenging the constitutionality of Michigan's Sex Offenders Registration Act ("Act"), as amended, MICH. COMP. LAWS § 28.721 *et. seq.*, claiming its provisions violate procedural and substantive due process protections under the Fourteenth Amendment to the Constitution, and the constitutional prohibition on *ex post facto* laws. Plaintiffs also contend that the notification provision of the Act, MICH. COMP. LAWS § 28.730(3), which authorizes dissemination of registration materials by electronic or computerized means, is unconstitutional. This matter is currently before the Court on defendants' motion to dismiss the action claiming that the Court lacks jurisdiction to entertain plaintiffs' claims, plaintiffs' claims are not ripe for review, plaintiffs lack standing, and plaintiffs fail to state a claim upon which relief can be granted. Plaintiffs filed a response in opposition to defendants' motion contending that defendants' assertions are without merit. For the reasons stated herein, the Court shall grant defendants' motion to dismiss with

respect to the Michigan Department of State Police and shall dismiss it as a defendant in this action. Further, the Court shall grant defendants' motion to dismiss for failure to state a claim as to the substantive and procedural due process claims of the Doe and Roe plaintiffs, and as to the Akellas' procedural due process claim.

## *Background*

Michigan's Sex Offenders Registration Act is the State's "version of a federally mandated registry or [sic] convicted sex offenders first passed by Congress in 1992." (Defs.' Br. in Supp. Mot. Dis. at 1). The Act requires individuals convicted of one of the enumerated criminal sexual offenses to register and to update their address within ten days of relocation. MICH. COMP. LAWS § 28.723(a), (b); MICH. COMP. LAWS § 28.729. In the event that an individual fails to register, the Act provides such conduct constitutes a felony. The Michigan Department of State Police is required to maintain a repository of the information compiled pursuant to the Act in the form of a computerized database. MICH. COMP. LAWS § 28.728. According to defendants, the database includes "name, aliases, social security number, address, a brief summary of information regarding each conviction, a complete physical description, blood type and DNA information where available." (Defs.' Br. in Supp. Mot. Dis. at 1).

In 1994, the Act was amended in response to an anticipated amendment in the federal law commonly known as "Megan's Law," 42 U.S.C. § 14071(d), in order to provide for the creation of a separate public registry of convicted sex offenders. MICH. COMP. LAWS § 28.728. The creation of the public registry was implemented on April 1, 1997. Defendants note that the public registry contains the following information: "name, known alias, address, physical description (*i.e.*, sex, height, weight, hair color, eye color) birth date and offense of conviction." (Defs.' Br. in Supp. Mot. Dis. at 2). The public registry

is organized by zip code and available for inspection to the public at state and local law enforcement agencies. MICH. COMP. LAWS § 28.728(2). The statute provides for dissemination of the public registry "by electronic, computerized, or other accessible means." MICH. COMP. LAWS § 28.730(3). In order to access information contained on the internet site, an individual must identify the zip code area sought for review.

On the issue of remedial measures addressing potential inaccuracy of the registry, defendants claim that they have undertaken steps to address such a problem. Defendants assert: "Local law enforcement agencies and Michigan State Police Posts were advised of the specific steps to delete erroneous information." (Defs.' Br. in Supp. Mot. Dis. at 2). In addition, defendants note that each law enforcement agency is authorized to directly enter the Law Enforcement Information Network ("LEIN") and make any verified changes. The procedure for correcting erroneous information is as follows: "the agency first verifies the registrant does not live at the registered address. The agency enters the LEIN system and deletes the address." (*Id.*) In the event the local agency refuses to comply, a member of the public may contact the Michigan State Police for assistance. The defendants note that verification may consist of a "statement from the current resident, a lease or title document or some other evidence of a change in residency." (*Id.*).

The Akella plaintiffs purchased a home in Washtenaw County approximately three years ago. The Akellas' address appears on the current registry of sex offenders. The Akellas are not required to register under the Act; thus, the Akellas' address is inappropriately listed.

Plaintiff John Doe pled guilty to criminal sexual conduct. He asserts that he had consensual sexual relations with his girlfriend, who was not sixteen years of age at the time. Plaintiff Doe is required to register under the Act and he alleges

that he is fearful that he will be subject to harassment, threats, and interference with employment, education, and housing. (Doe Aff. Ex. 7).

Similarly, Plaintiff Roe engaged in sexual relations with his girlfriend who was not yet sixteen either. He pled guilty to statutory rape and received a sentence of five years probation. Plaintiff Roe is required to register under the Act. In addition, plaintiff Roe fears that he will suffer from harassment, threats, and interference with employment, education, and housing. (Roe Aff. Ex. 8).

Plaintiffs Doe and Roe challenge the constitutionality of the community notification provisions of the Act on substantive and procedural due process grounds. With respect to the notification provisions of the Act, the Doe and Roe plaintiffs note that it does not afford prospective registrants notice or any opportunity for a hearing before placement on the registry. In addition, the Doe and Roe plaintiffs complain that the Act is devoid of any rational basis for determining an individual's inclusion on the list.

The Akella plaintiffs challenge the Act on procedural due process grounds. The Akellas assert that the Act fails to include a process by which an individual whose name or address incorrectly appears may have the name or address removed.

I. Eleventh Amendment Immunity

■ Defendants claim that plaintiffs' maintenance of the suit against the Michigan Department of State Police is barred by the Eleventh Amendment as its immunity from suit has been neither abrogated nor waived. Further, relying on the Supreme Court's decision in *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), defendants assert that plaintiffs' action against

State Police Colonel Michael D. Robinson is similarly barred because it implicates "special sovereignty" interests recognized by the Supreme Court as insufficient to invoke the *Ex parte Young* [1] fiction.

■ "The Eleventh Amendment is an explicit limitation of the judicial power of the United States." *Missouri v. Fiske,* 290 U.S. 18, 25, 54 S.Ct. 18, 20, 78 L.Ed. 145 (1933). The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." U.S. CONST. amend. XI. In the absence of consent, a suit in which the State or one of its departments or agencies is named as a defendant is proscribed by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (citing *Florida Dep't of Health and Rehab. Serv. v. Florida Nursing Home Ass'n,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981)). The issue of whether the Eleventh Amendment is applicable is a question of law. *Timmer v. Michigan Dep't of Commerce,* 104 F.3d 833, 836 (6th Cir.1997).

■ Plaintiffs' action against the Michigan Department of State Police is barred by the Eleventh Amendment. "The Eleventh Amendment bars such suits unless the State has waived its immunity, *Welch v. Texas Dep't of Highways and Pub. Transp.,* 483 U.S. 468, 472–73, 107 S.Ct. 2941, 2945–46, 97 L.Ed.2d 389 (1987), or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 2309–10, 105 L.Ed.2d 45 (1989); *see also Pennhurst,*

---

1. *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In *Young,* the Supreme Court recognized an exception to Eleventh Amendment immunity for certain suits seeking declaratory and injunctive relief against

state officers in their official capacities. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989).

465 U.S. at 100, 104 S.Ct. at 908 ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). The Amendment thus provides immunity to the State, as well as its departments and agencies, from all suits, whether for declaratory, injunctive, or monetary relief. *See Thiokol Corp. v. Department of Treasury,* 987 F.2d 376, 381 (6th Cir.1993); *accord Pennhurst,* 465 U.S. at 100, 104 S.Ct. at 908. ("This jurisdictional bar applies regardless of the nature of the relief sought.") Plaintiffs do not identify any facts that would support a finding that the State has waived its immunity or that Congress has expressly overridden it. The Court finds that plaintiffs' maintenance of the instant case against the Michigan Department of State Police is barred by the Eleventh Amendment. Thus, the Court dismisses the Michigan Department of State Police as a defendant in this action.

 In addition, defendants contend that plaintiffs' action is barred against defendant Robinson because the suit names defendant Robinson in his official capacity. Defendants contend that in such a suit the state is the real party in interest; hence, the suit is barred. Further, defendants claim *Ex parte Young* is inapplicable because the instant suit implicates special state sovereignty interests such as "regulation of the state's internal affairs, compliance with legislative funding mandates and the decision to adopt state legislation required to meet federal funding mandates." (Defs.' Br. in Supp. Mot. Dis. at 7).

Plaintiffs have elected to bring suit against defendant Robinson in his official capacity as state police colonel seeking declaratory and injunctive relief. Thus, the question presented is whether defendant Robinson can be cloaked with the State of Michigan's Eleventh Amendment sovereign immunity in this instance. While it is clear that it is the constitutionality of MICH. COMP. LAWS § 28.721 *et. seq.,*

and not defendant Robinson's enforcement of that statute, that is at the heart of the litigation, and thus it is the State of Michigan, and not defendant Robinson, who is the real party in interest, the Court concludes that *Ex parte Young, supra,* permits plaintiffs' challenge.

 A suit against a state official is barred when the action in essence seeks to recover money from the state because " 'the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity.' " *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (quoting *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945)). " 'Whether a suit against State officials in their official capacity is deemed to be against the State depends on whether the plaintiff seeks "retroactive" or "prospective relief." ' " *Nelson v. Miller,* 170 F.3d 641, 646 (6th Cir.1999) (quoting *Doe v. Wigginton,* 21 F.3d 733, 736 (6th Cir.1994)). The Amendment bars suits that "impose a liability which must be paid from public funds in the state treasury." *Edelman,* 415 U.S. at 663, 94 S.Ct. at 1356. However, "under the doctrine announced in the landmark case of *Ex parte Young,* a state official sued in his official capacity for prospective equitable relief 'is generally not regarded as "the state" for purposes of the Eleventh Amendment and the case may proceed in federal court.' " *MacDonald v. Village of Northport, Michigan,* 164 F.3d 964, 970 (6th Cir.1999) (quoting *ANR Pipeline Co. v. Lafaver,* 150 F.3d 1178, 1188 (10th Cir.1998)). Plaintiffs' complaint seeks declaratory and injunctive relief against defendant Robinson in his official capacity. Thus, plaintiffs' prosecution of the suit is sanctioned under the doctrine espoused by the Supreme Court in *Ex Parte Young, supra.*

However, relying on the Supreme Court's decision in *Coeur d'Alene,* defendants claim that plaintiffs' suit is barred because it implicates special sovereignty interests of the State of Michigan. The

facts of *Coeur d'Alene* involve a suit brought by the Coeur d'Alene Indian tribe against the State of Idaho, various state agencies, and state officials in their individual capacities claiming ownership in the submerged lands and bed of Lake Coeur d'Alene. The Supreme Court was faced with the issue of whether the *Ex parte Young* doctrine permitted the suit to continue against the various state officials. In elaborating on the confines of the doctrine, the Supreme Court stated:

> To interpret *Young* to permit a federal court-action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer, named in his individual capacity, would be to adhere to an empty formalism and to undermine the principle, reaffirmed just last Term in *Seminole Tribe,* that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction. The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading. Application of the *Young* exception must reflect a proper understanding of its role in our federal system and respect for state courts instead of reflexive reliance on an obvious fiction.

*Coeur d'Alene,* 521 U.S. at 270, 117 S.Ct. at 2034. However, the Court noted: "An allegation of an on-going violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction." *Id.* at 281, 117 S.Ct. at 2040. In rejecting the tribe's attempt to invoke the *Young* fiction, the Supreme Court noted, "[T]his case is unusual in that the Tribe's suit is the functional equivalent of a quiet title action which implicated special sovereignty interests." *Id.* Further underscoring the unique nature of the tribe's suit, the Court continued: "not only would the relief block all attempts by these officials to exercise jurisdiction over a substantial portion of land but also would divest the State of its sovereign control over submerged lands, lands with a unique

status in the law and infused with a public trust the State itself is bound to respect." *Id.* at 283, 117 S.Ct. at 2041.

The Sixth Circuit has interpreted *Coeur d'Alene* to require an examination "whether the relief being sought against a state official 'implicates special sovereignty interests,' and, if so, whether the requested relief is the 'functional equivalent' of a form of legal relief against the state that would otherwise be barred by the Eleventh Amendment." *MacDonald,* 164 F.3d at 971–72 (quoting *ANR Pipeline Co.* 150 F.3d at 1190–91, 1193–94). However, the Fifth Circuit recently noted "We concur with the consensus among other courts that although the principal opinion in *Coeur d'Alene* suggests a case-by-case (rather than rule-based) approach to the application of *Ex parte Young, see Coeur d'Alene,* 117 S.Ct. at 2038–40 (opinion of Kennedy, J.), this part of the opinion did not muster a majority, and a majority of the Court would continue to apply the rule of *Ex parte Young* as it has been traditionally understood, *see id.* at 296, 117 S.Ct. at 2047 (O'Connor, J., concurring in part and concurring in the judgment (joined by Scalia and Thomas, JJ.)); *id.* at 298, 117 S.Ct. at 2048 (Souter, J., dissenting (joined by Stevens, Ginsburg, and Breyer, JJ.))". *Earles v. State Bd. of Certified Pub. Accountants of Louisiana,* 139 F.3d 1033, 1039 (5th Cir.1998). Thus, the majority of the Court made it clear that *Ex parte Young* continues to be available where "a plaintiff alleges an on-going violation of federal law, and where the relief sought is prospective rather than retrospective." *Doe v. Lawrence Livermore Nat'l Lab.,* 131 F.3d 836, 839 (9th Cir.1997) (quoting *Coeur d'Alene,* 117 S.Ct. at 2034–36).

In the case *sub judice* plaintiffs challenge the constitutionality of the Act by alleging that it violates plaintiffs' substantive and procedural due process rights. In addition, the Doe and Roe plaintiffs allege that it violates the *Ex Post Facto* Clause of

the Constitution. Plaintiffs seek vindication of these rights through this Court's issuance of declaratory and injunctive relief. The Court concludes that the rule of *Ex parte Young* empowers this Court to grant the prospective injunctive and declaratory relief sought by the plaintiffs if the Act challenged in this case does indeed violate federal law.

Even assuming the applicability of *Coeur d'Alene*, this Court does not determine that it operates as a bar to the invocation of the *Young* fiction. While defendants assert "special sovereignty" interests such as "regulation of the state's internal affairs," "compliance with legislative funding mandates," and the decision to "adopt state legislation required to meet federal funding mandates," (Defs.' Br. in Supp. Mot. Dis. at 7), the state has failed to assert how the relief sought is the "functional equivalent" of relief that would be barred by the Eleventh Amendment. The relief sought, enjoining of enforcement of an unconstitutional statute, is relief this Court is clearly empowered to grant and not barred by the Eleventh Amendment. Further, the sovereignty interests implicated in the case at bar, *i.e.* "regulation of the state's internal affairs" and "compliance with funding mandates" are not akin to those sovereignty interests recognized by the Supreme Court in *Coeur d'Alene*. An action seeking to quiet title to the navigable waters and lake beds held by a state in public trust for its citizens is not tantamount to the state's interests in "regulation of its internal affairs." Accordingly, the Court denies defendants' motion to dismiss with respect to defendant Robinson.

## II. Standing

Defendants also seek to dismiss plaintiffs' complaint on the grounds that plaintiffs lack the requisite standing. In support of this contention, defendants claim that the Akella plaintiffs "have not suffered an injury in fact, actual or imminent." (Defs.' Br. in Supp. Mot. Dis. at

10). The defendants also contend that the injuries about which the Akellas complain are purely speculative on the present record. Further, with respect to the Doe and Roe plaintiffs, defendants claim that the harm is not "fairly traceable" to defendants' conduct. Defendants note, "[a]ny harm which may be perpetrated by third parties is only tangentially related to the prublication [sic] of the register and is separately redressed under the state's criminal and civil procedures." (Defs.' Br. in Supp. Mot. Dis. at 11).

■ The standing doctrine requires that a litigant have suffered an injury-in-fact that is fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. *Peoples Rights Org., Inc. v. City of Columbus,* 152 F.3d 522, 526 (6th Cir.1998) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)); *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). The Supreme Court's seminal decision on standing, *Lujan v. Defenders of Wildlife,* succinctly stated the inquiry as follows:

> First, the plaintiff must have suffered an "injury in fact"-an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of-the injury must be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan,* 504 U.S. at 560–61, 112 S.Ct. at 2136 (citations and footnote omitted). The Supreme Court continued with an articulation of the standard necessary to establish standing at the requisite stage of the litigation:

The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim."

*Id.* at 561, 112 S.Ct. 2130 (citations omitted).

■ In order to resolve whether plaintiffs pass the standing hurdle, the Court must determine whether plaintiffs have alleged an injury that is traceable to the provisions of the Act and redressable by this Court. As the court is considering a motion to dismiss, it "'must accept as true all the material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Kardules v. City of Columbus,* 95 F.3d 1335, 1346–47 (6th Cir.1996) (quoting *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975)).

■ In order to establish the "injury in fact" element of standing, "[t]he plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct;" moreover, "the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (citations omitted). With respect to the Akellas, the complaint alleges the improper placement of their home address on the sex offender registry offends their procedural due process rights. The Akellas also allege that the Act's failure to include a mechanism by which individuals improperly appearing on the list may have their names removed is an unconstitutional deprivation of procedural due process. The Akella plaintiffs further allege that as a result of the improper placement of their home address on the sex offender registry, they have suffered a diminution in property value, and they fear they will suffer from harassment, vandalism or other acts of violence. (Compl. at ¶ 20).

Accepting the allegations of the complaint as true, which this Court must do on a motion to dismiss, the Court concludes that the Akella plaintiffs have pled sufficient facts to demonstrate the existence of an injury-in-fact. The address of the Akellas is incorrectly listed on the sex offender registry. The complaint alleges that the Akellas intend to place their home on the market for sale and that they can expect a decline in value as a result of the placement on the internet. The anticipated decline in property value from the incorrect listing on the registry constitutes a sufficient "injury-in-fact."

Having addressed the "injury in fact" element, a plaintiff next must allege that this injury is "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). The Court finds that the requirements of traceability and redressability are similarly met. The unlawful conduct about which the Akella plaintiffs complain is the improper listing of their home address on the sex offender registry and the failure to provide a mechanism to remove an incorrectly listed address. The conduct is traceable to constitutionality of the Act because it provides for the dissemination of registration information over the internet.

Plaintiffs allege that the Act's provisions that provide for the dissemination of the information over the internet violate procedural due process rights. Further, the

Act does not provide a means to have the Akellas' address removed. Thus, the improper conduct is traceable to the challenged action. In addition, a decision by this Court that the Act is unconstitutional is likely to redress the harm about which the Akellas complain, in that their address will no longer appear on the website. Accordingly, the Court concludes that the Akellas have established standing.

 The Doe and Roe plaintiffs challenge the constitutionality of the Act on substantive due process grounds contending that their names were publicly listed on the registry in the absence of any rational basis or purpose. Further, the Doe and Roe plaintiffs allege a procedural due process violation in that the Act fails to afford them an opportunity for notice or a hearing before placing their names on the registry. Plaintiffs contend that "[t]he mere listing of their names is sufficient to give them standing to attack the statute for failing to provide due process and for violating their rights to substantive due process." (Pls.' Br. in Opp. Mot. Dis. at 10).

The Court finds that plaintiffs Doe and Roe have standing to challenge the constitutionality of the Act. To the extent that the Act is alleged to violate the procedural due process rights of the Doe and Roe plaintiffs by placing their names on the registry without affording them notice or a hearing, plaintiffs Doe and Roe have alleged an injury-in-fact. Further, the Court finds that the requirements of causation and redressability are met. A determination that the Act violates plaintiffs Doe's and Roe's procedural due process rights would result in a declaration that it is unconstitutional. If the Act is found to be unconstitutional, then such a decision would redress the harms of which the Doe and Roe plaintiffs complain. Accordingly, the Court declines to dismiss the instant action on the grounds of standing.

### III. Ripeness

 Defendants seek dismissal of plaintiffs' complaint on the grounds of ripeness. The Constitution confines the federal court to the adjudication of actual "cases" and "controversies." U.S. CONST. ART. III, § 2. As the Supreme Court has explained, the power of the federal judiciary is limited to those disputes "which confine federal courts to a role consistent with a system of separated powers and which are traditionally thought to be capable of resolution through the judicial process." *Flast v. Cohen,* 392 U.S. 83, 97, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). A doctrine that "cluster[s] about Article III" is ripeness. *Vander Jagt v. O'Neill,* 699 F.2d 1166, 1178–79 (D.C.Cir.1982) (Bork, J., concurring), *cert. denied,* 464 U.S. 823, 104 S.Ct. 91, 78 L.Ed.2d 98 (1983). Ripeness requires that the "injury in fact be certainly impending." *National Treasury Employees Union v. United States,* 101 F.3d 1423, 1427 (D.C.Cir.1996). Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for the court's review. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977).

In this Court's opinion, plaintiffs' claims are ripe for review. With respect to the Doe and Roe plaintiffs' claims of due process violations, the plaintiffs satisfied the "injury-in-fact" requirements when their names appeared on the registry pursuant to the Act. In addition, the Akellas claim a violation of procedural due process because the Act does not contain any provision by which an improper listing may be removed. Because the plaintiffs' listings appear on the registry, the Court concludes that the plaintiffs' claims are ripe for review. Accordingly, to the extent that defendants seek dismissal of the action on the grounds of ripeness, the Court denies defendants' motion.

## IV. Rule 12(b)(6)

### *Standard of Review*

 FED. R. CIV. P. 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted. "In reviewing a dismissal on the pleadings all allegations in the complaint are taken as true and the complaint is construed liberally in favor of the party opposing the motion to dismiss." *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). "When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Bloch v. Ribar,* 156 F.3d 673, 677 (6th Cir.1998). However, the Court need not accept as true legal conclusions or unwarranted factual inferences. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987). In order to satisfy the mandates of Rule 12(b)(6), a complaint must "afford the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Westlake,* 537 F.2d at 858 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Dismissal pursuant to Rule 12(b)(6) is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99.

### A. *Procedural Due Process*

#### 1. Doe and Roe Plaintiffs

The Doe and Roe plaintiffs challenge the public notification provisions imposed by the Act. Plaintiffs Doe and Roe assert that the public notification provisions infringe upon their constitutionally protected interests in "reputations, privacy, employment, housing, and physical safety without procedural due process." (Pls.' Resp. at 11). Specifically, plaintiffs complain that "[p]eople publicly listed as sex offenders along with their families, are subject to humiliation, ostracism from the community, loss of employment and employment opportunities, housing, and physical danger." (*Id.*).

Defendants claim that plaintiffs have no constitutionally cognizable interest that is implicated by the community notification provisions of the Act.

The Fourteenth Amendment to the United States Constitution provides that no person shall be deprived of life, liberty, or property without due process of law. U.S. CONST.amend. XIV, § 1. The Supreme Court has explained that the central meaning of procedural due process is that "'[p]arties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.' It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.'" *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972) (quoting *Baldwin v. Hale,* 68 U.S. (1 Wall.) 223, 233, 17 L.Ed. 531 (1863), and *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)); *see also Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 901–02, 47 L.Ed.2d 18 (1976) ("[T]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") These procedural safeguards reflect "the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference." *Fuentes,* 407 U.S. at 81, 92 S.Ct. at 1994. The Sixth Circuit has instructed that there are two elements of a procedural due process claim: (1) the existence of a constitutionally protected property or liberty interest, and (2) a deprivation of this interest without adequate process. *Mertik v. Blalock,* 983 F.2d 1353, 1364 (6th Cir.1993).

### A. Liberty

 Plaintiffs initially complain that the notification provisions of the Act deprive them of "fundamental liberty interests" without due process of law. The alleged liberty deprivation is articulated by plaintiffs as follows:

The publicly available registry information brands Plaintiffs and others listed on the internet and at local police stations as dangerous sex offenders likely to commit more crimes and so assures harassment, public humiliation and scorn for themselves and their families. Plaintiffs also allege that inclusion on the list infringes on their privacy rights and brings about loss of employment and employment opportunities, restricts their ability to find housing, and makes them targets for potential physical harm.

(Pls.' Resp. at 14). In *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) the Supreme Court recognized a protectable liberty interest "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Id.* at 443, 91 S.Ct. at 507. Further in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court held that a government employee's liberty interest is implicated if the charges for which he was dismissed imposed upon him "a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Id.* at 573, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548. Finally, in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court clarified that "reputation alone, apart from some more tangible interests such as employment, is [n]either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 693, 96 S.Ct. at 1155. Thus, in order to state a claim, plaintiffs must allege the deprivation of some tangible interest such as employment or property, in addition to the deprivation of reputation.

■ Plaintiffs principally rely on a decision from the District Court for the Southern District of New York that considered a constitutional challenge to the notification provisions of an analogous sex offender statute and concluded:

In light of the requirements placed on registrants, there can be no genuine dispute that registration alters the legal status of all convicted sex offenders subject to the Act .... These requirements obviously encroach on the liberty of convicted sex offenders, and therefore, they suffer a tangible impairment of a right in addition to mere harm to reputation.

*Doe v. Pataki*, 3 F.Supp.2d 456, 468 (S.D.N.Y.1998); *see also E.B. v. Verniero*, 119 F.3d 1077, 1106 (3d Cir.1997).[2] Plaintiffs argue that the "widespread public dissemination" of their names, addresses, birthdates, and physical descriptions subjects registrants to "ostracism, public harassment and humiliating comments ...." (Pls.' Resp. at 15). Further, plaintiffs argue that in addition to the "stigma" they've experienced, the Act "significantly impinges [on] ... their ability to follow their chosen profession, choose housing and enjoy living with and associating with family member [sic], and be free from threat of physical harm." (*Id.*).

The Court rejects the Doe and Roe plaintiffs' attempt to establish a transgression of a protected liberty interest. While the plaintiffs' claim that widespread dissemination of information concerning their conviction of a sex offense will result in a

---

**2.** A classification based on severity of the offense, as exists in some other states, should, in this Court's opinion, be included in the Michigan statute. However, the fact that this Court believes that it would be preferable if the statute included such a classification, does not mean that the failure to include such a classification renders the statute constitutionally infirm. It does not. The Legislature has the right to enact legislation that many citizens would consider "harsh" or "unfair."

These citizen beliefs do not make such laws unconstitutional. *See e.g.,* MICH. COMP. LAWS § 333.7403(2)(a)(i) (providing that possession of 650 grams or more of cocaine mandated life imprisonment.) This law, although severely criticized by many, and which was subsequently amended by the legislature, was upheld as constitutional by the United States Supreme Court. *See Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991).

loss of liberty, plaintiffs ignore the inescapable fact that such information is already a matter of public record. The Court fails to discern how plaintiffs can claim deprivation of a liberty interest resulting from dissemination of information already the subject of public record. Plaintiffs acknowledge that the information is already a matter of public record, but claim that it is the "widespread dissemination" of such information that implicates a protected liberty interest. However, plaintiffs have cited no authority for the proposition that the magnitude of dissemination, in and of itself, is sufficient to trigger a deprivation of a liberty interest. As elaborated more fully in the ensuing discussion on plaintiffs' attempt to assert a privacy interest, the Court is satisfied that plaintiffs have failed to articulate the deprivation of a constitutionally protected liberty interest in their reputation.

### B. Right to Privacy

■ According to the Doe and Roe plaintiffs, the Act infringes on constitutionally protected privacy interests by "subjecting their names and addresses to public scrutiny in massive proportion." (Pls.' Br. at 16). The Supreme Court in *Whalen, supra*, delineated a constitutional right to privacy pertaining to disclosure of personal information as follows: "The other principle of privacy ... protects an individual's right to control the nature and extent of information released about that individual." *Bloch v. Ribar*, 156 F.3d 673, 683 (6th Cir.1998) (citing *Whalen*, 429 U.S. at 599–600, 97 S.Ct. at 869; *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 457, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977)).[3] The Sixth Circuit has "narrowly construed the holdings of *Whalen* and *Nixon* to extend the right to information privacy only to interests that implicate a fundamental liberty interest." *Bloch*, 156 F.3d at 684 (citing *J.P. v. DeSanti*, 653 F.2d 1080, 1090

(6th Cir.1981)). The Sixth Circuit in *DeSanti* set forth the following test applicable to alleged deprivations of the right to privacy: (1) the interest at stake must implicate either a fundamental right or one implicit in the concept of ordered liberty; and (2) the government's interest in disseminating the information must be balanced against the individual's interest in keeping the information private. *DeSanti*, 653 F.2d at 1090–91. Against this framework, the Court must determine whether the Doe and Roe plaintiffs have alleged a sufficient deprivation of the right to privacy.

To the extent that plaintiffs challenge the dissemination of information concerning their arrests as violative of the right to privacy, the Court rejects such a claim. This Court agrees with prior decisions in our district confronting challenges to Michigan's statute on privacy grounds and concluding that plaintiffs do not have a "legitimate privacy interest in preventing compilation and dissemination of truthful information that is already, albeit less conveniently, a matter of public record." *Doe v. Kelley*, 961 F.Supp. 1105, 1112 (W.D.Mich.1997); *Lanni v. Engler*, 994 F.Supp. 849 (E.D.Mich.1998). Further, the Ninth Circuit dismissed a similar challenge, on privacy grounds, to the State of Washington's sex offender act stating: "[A]ny right to privacy, to the extent that it exists at all, would protect only personal information. The information collected and disseminated by the Washington statute is already fully available to the public and is not constitutionally protected ...." *Russell v. Gregoire*, 124 F.3d 1079, 1094 (9th Cir.1997). Thus, the Court concludes that dissemination of sex offender registration material does not violate any constitutionally protected privacy interest of plaintiffs.

---

**3.** The Court in *Whalen, supra*, identified the first principle of the right to privacy as protecting "an individual's right to make certain personal choices. This principle, for example, underscored the Supreme Court's rationale in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973)." *Bloch*, 156 F.3d at 683.

Further, the Court is satisfied that the dissemination of an offender's address does not violate any constitutionally protected privacy interests. The Third Circuit recently addressed convicted sex offenders' challenge to the notification provisions of New Jersey's Sex Offender Registration Act and upheld the notification aspects of the law as failing to infringe on a constitutionally protected privacy right. *Paul P. v. Verniero*, 170 F.3d 396 (3d Cir.1999). Specifically, the plaintiffs in *Paul P.* launched a two-pronged attack on the statute, initially contending that the dissemination of personal information violated their privacy rights and the community notification provisions interfered with their privacy interests in maintaining the integrity of their most "intimate relationships." *Id.* at 399-00. While concluding that the plaintiffs may have "some nontrivial interest in one's home address by persons who do not wish it disclosed," the Court engaged in a balancing inquiry and held that the state's interest in "preventing sex offenses" was a compelling justification supporting disclosure. *Id.* at 404.

While this Court is not prepared to hold that plaintiffs have even a "nontrivial" interest in preventing disclosure of their home addresses, the Court agrees with the holding of the Third Circuit that the "nature and significance" of the state's interest justifies the intrusion on plaintiffs' interests. Under *DeSanti, supra*, a court must balance the state's interest in disseminating the information against the individual's interest in keeping it private. Arguably, the State of Michigan has a similar compelling interest to that of New Jersey in "knowing where prior sex offenders live so that susceptible individuals can be appropriately cautioned." *Paul P., supra*, 170 F.3d at 404. To the extent that plaintiffs desire to limit widespread exposure of that information which is already public, the Court does not conclude that the plaintiffs' interest outweighs, the State of Michigan's interest. Accordingly, the Court concludes that plaintiffs have failed to articulate a constitutionally protected privacy interest in the dissemination of their home address.

## C. Personal Security

▮ Plaintiffs also allege that the public dissemination of information about their conviction has subjected registrants to "threats, anonymous letters telling them to move, loss of housing, reduced educational opportunities for themselves and their children and siblings whose performance in school is affected by the notoriety of the public listing." (Pls.' Br. at 20). As authority for their claim, plaintiffs Doe and Roe cite the Sixth Circuit's decision in *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir.1998) in which the court identified a due process right in the disclosure of highly personal information where the disclosure places an individual "at substantial risk of serious bodily harm, possibly even death, from a perceived likely threat." *Id.* at 1064.

In *Kallstrom*, the Sixth Circuit noted that "[i]ndividuals have 'a clearly established right under the substantive component of the Due Process Clause to personal security and to bodily integrity,' and this right is fundamental where 'the magnitude of the liberty deprivation that [the] abuse inflicts upon the victim ... strips the very essence of personhood.'" *Kallstrom*, 136 F.3d at 1062–63 (quoting *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir.1996)). The Court continued by noting "it goes without saying that an individual's 'interest in preserving her life is one of constitutional dimension.'" *Id.* (quoting *Nishiyama v. Dickson County*, 814 F.2d 277, 280 (6th Cir.1987) (en banc)). The facts of *Kallstrom* involved the City of Columbus' disclosure of personal information contained in police officer personnel files to defense counsel during a criminal trial in which the officers testified against the defendants. In finding that the disclosure implicated a

due process privacy protection, the Court noted:

> In finding that the City's release of private information concerning the officers to defense counsel ... rises to constitutional dimensions by threatening the personal security and bodily integrity of the officers and their family members, we do not mean to imply that every governmental act which intrudes upon or threatens to intrude upon an individual's body invokes the Fourteenth Amendment. But where the release of private information places an individual at substantial risk of serious bodily harm, possibly even death, from a perceived likely threat, the "magnitude of the liberty deprivation ... strips the very essence of personhood."

*Kallstrom,* 136 F.3d at 1064.

The Court concludes that plaintiffs Roe and Doe have failed to state a claim for a violation of due process rights. First, the due process protection accorded the plaintiffs in *Kallstrom* assumed the disclosure of "private information." Here, the information that plaintiffs allege implicates the privacy right, to wit their sex offender convictions, is already a matter of public record that is available for inspection at a local police station. Further, even viewing the allegations of the complaint in the light most favorable to plaintiffs, the Court cannot conclude that plaintiffs have articulated, with any degree of specificity, a "perceived likely threat" to their personal security and bodily integrity. The complaint does not contain allegations on which the Court could conclude that plaintiffs face a substantial risk of severe bodily harm sufficient to state a violation of their due process rights. Accordingly, the Court concludes that plaintiffs Doe and Roe have failed to state a claim for a violation of their due process rights premised upon personal security.

As previously stated, in order to set forth a claim for a procedural due process violation, plaintiffs must allege the existence of a constitutionally protected property or liberty interest. *See Mertik, supra,* 983 F.2d at 1364. The Court concludes that plaintiffs have failed to set forth a deprivation of a protected property or liberty interest. Having failed to set forth a violation of a protected interest, the Court will not engage in an analysis of the alleged process due. Accordingly, the Court concludes that plaintiffs have failed to set forth a deprivation of a procedural due process claim, and dismisses plaintiffs' procedural due process claim.

2. The Akellas' Procedural Due Process Claim

The Akellas contend that they have been deprived of due process because the Act provides no mechanism by which the Akellas may have their incorrectly listed address removed from the registry. The Akellas claim that "[t]he stigma attached to living in a residence wrongly attributed to a sex offender may put many people in danger that they are not aware of." (Pls.' Br. in Opp. Mot. Dis. at 24). Further, the Akellas contend that the procedural due process to which they're entitled "requires only that the State Police notify residents in person or by mail that their address is publicly listed as the residence of a sex offender." (*Id.*).

The Akellas primarily claim a protected privacy interest in the dissemination of their home address. In *U.S. Dep't of Defense v. F.L.R.A.,* 510 U.S. 487, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994), the Supreme Court forbade dissemination of the home addresses of federal civil service employees by their employment agencies pursuant to Freedom of Information Act ("FOIA") requests. While premised upon protection accorded employees under the Privacy Act, 5 U.S.C. § 552a(b)(2), the Supreme Court noted, "[w]e are reluctant to disparage the privacy of the home, which is accorded special consideration in our Constitution, laws, and traditions." *Id.* at 510, 114 S.Ct. at 1015. The Akellas predicate their privacy right with respect to the

dissemination of their home address on the aforementioned language. However, the Court notes that in *U.S. Dep't of Defense,* the Supreme Court afforded these protections to federal employees under the strictures of the Privacy Act and did not implicate any substantive privacy rights under the Constitution. The absence of reliance upon a substantive privacy right is evident from the Supreme Court's holding: "FOIA, thus, does not require the agencies to divulge the addresses, and the Privacy Act, therefore, prohibits their release to the unions." *U.S. Dep't of Defense,* 510 U.S. at 502, 114 S.Ct. at 1016.

The Court finds plaintiffs' reliance on *U.S. Dep't of Justice v. Reporters Comm.,* 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) similarly unavailing for the identification of a privacy right. In *Reporters Comm.,* the Supreme Court determined that Exemption 7(C) of the FOIA did not permit disclosure of the contents of a Federal Bureau of Investigation "rap sheet" to a third party. The Court recognized a privacy right in certain personal information contained in the "rap sheet;" however, again the Court identified Exemption 7(C) as the source of this right. Further, the Supreme Court distinguished this privacy right from a constitutional privacy right noting that such protections are "of course, not the same as ... the question whether a tort action might lie for invasion of privacy or the question whether an individual's interest in privacy is protected by the Constitution." *U.S. Dep't of Justice,* 489 U.S. at 762, fn. 13, 109 S.Ct. at 1476. Thus, the Court does not read either of the Supreme Court decisions on which plaintiffs rely as identifying a due process privacy right in the disclosure of private information about an individual such as an address.

Nor does the Court conclude that the Sixth Circuit's decision in *Kallstrom* provides a basis on which the Akellas may allege a procedural due process claim. *Kallstrom* clearly forbade the disclosure of personal information contained in person-nel files where the release of that information "placed an individual at a substantial risk of serious bodily harm...." *Kallstrom,* 136 F.3d at 1064. The facts pled by the Akellas in the complaint do not support the finding that they face a "substantial risk of serious bodily harm" by the incorrect listing of their address on the sex offender registry. Therefore, the Court concludes that the Akellas have failed to state a claim for a violation of their procedural due process rights. Accordingly, the Court dismisses the Akellas' procedural due process claims.

### A. *Substantive Due Process*

 The Doe and Roe plaintiffs allege that the Act violates their substantive due process rights in that it "arbitrarily deprives Plaintiffs of their liberties." (Pls.' Resp. at 25). The plaintiffs further elaborate that the Act is arbitrary because its "public notice provisions apply to all registrants, including Plaintiffs and others who have been rehabilitated and pose no threat to the community ...." (*Id.*). At oral argument, counsel for plaintiffs identified the Sixth Circuit's decision in *Curto v. City of Harper Woods,* 954 F.2d 1237 (6th Cir. 1992) as the principal authority for plaintiffs' position.

*Curto* involved a business owner's challenge to a municipal ordinance of the City of Harper Woods prohibiting the parking of more than three cars at a time at gasoline stations. Plaintiff, a gasoline station owner, challenged the ordinance as violative of his due process rights because it allegedly "fail[ed] to advance a legitimate governmental interest, [was] an unreasonable means for attempting to advance such legitimate governmental interests, and [was] unreasonably and arbitrarily applied to Plaintiff ...." *Id.* at 1243. The Sixth Circuit applied the following test to adjudge whether the ordinance violated plaintiff's substantive due process rights. "[A]n ordinance or regulation is invalid if it fails to advance a legitimate governmental interest or if it is an unreasonable means

of advancing a legitimate governmental interest." *Id.*

Applying the test articulated by the Sixth Circuit in *Curto,* the Court concludes that the Act does not violate plaintiffs' substantive due process rights. As previously stated herein, the regulation advances a legitimate government interest in protecting the community by promoting awareness of the presence of convicted sex offenders from whom certain members of the community may face a danger. The Act is a reasonable means of advancing the interest because its mechanism for notification enhances a community member's ability to determine the presence of a convicted sex offender in his or her community. Plaintiffs claim the Act is an "unreasonable" means of advancing the government's interest because by requiring the registration of all offenders the statute ignores the rehabilitative goals of the justice system in that some released offenders may no longer pose a threat to the community. However, the purpose of the statute is to promote awareness of the presence of an offender, and this aim is reasonably accomplished by notification, irrespective of the threat of prospective harm. Thus, the Court concludes that Doe and Roe plaintiffs' substantive due process claims must fail. Accordingly, the Court dismisses these claims.

B. *Ex Post Facto*

■■■ Defendants also seek dismissal of plaintiffs' *ex post facto* claims contending that the courts considering whether similar registration requirements constituted punishment have all conclusively found no violation of the *Ex Post Facto* Clause. Plaintiffs retort that defendants misconstrue the nature of plaintiffs' challenge to the Act in that plaintiffs direct the contest to the constitutionality of the notification provisions and not the registration provisions of the Act. According to plaintiffs, "[n]o other sex offender notification laws have passed constitutional muster without procedural safeguards that ensure the burden imposed on registrants does not exceed what is necessary to accomplish the legitimate goals of the law." (Pls.' Br. in Opp. Defs.' Mot. Dis. at 28). Further, plaintiffs claim that they are entitled to introduce factual evidence and develop a record to support their claim that the notification provisions violate the *Ex Post Facto* Clause.

■■■ "To fall within the *ex post facto* prohibition, a law must be retrospective—that is 'it must apply to events occurring before its enactment'—and it 'must disadvantage the offender affected by it,' *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981), by ... increasing the punishment for the crime, *see Collins v. Youngblood,* 497 U.S. 37, 50, 110 S.Ct. 2715, 2723, 111 L.Ed.2d 30 (1990)." *Shabazz v. Gabry,* 123 F.3d 909, 912 (6th Cir.1997). The issue of whether application of the notification provisions of the Act constitute punishment has twice been confronted by courts in this district. In *Lanni v. Engler,* the court stated:

> [T]he purpose of the act was to protect the public, and not to punish sex offenders. Second, the historical precedent does not demonstrate an objective punitive purpose. Finally, neither the direct [nor] indirect effects of the Act are sufficiently onerous for this Court to conclude that any punitive effects clearly outweigh the remedial purpose.

*Lanni,* 994 F.Supp. at 855. The court reached a similar conclusion in *Doe v. Kelley, supra* in concluding that the notification provisions of the Act did not pose an *ex post facto* violation. *Doe,* 961 F.Supp. at 1111–12. Additionally, the Ninth Circuit in *Russell v. Gregoire, supra,* confronted an *ex post facto* challenge to the notification provisions of the State of Washington's Act and concluded:

> [W]e conclude that the notification provisions were intended to be regulatory and not punitive. Weighing all of the considerations ... we hold that, as a matter of law, the possible effects of the notification provision are not so punitive

in fact as to prevent us from legitimately viewing the Act as regulatory in nature. Even less do the possible effects amount to "the clearest proof" of a punitive effect sufficient to overcome the legislature's nonpunitive intent. This is especially so given the strong remedial goals of the notification provisions. The notification provisions of the Act do not amount to punishment subject to the Ex Post Facto Clause.

*Russell*, 124 F.3d at 1093.

This Court agrees with the previously cited decisions and holds that the notification provisions were intended to serve a regulatory purpose in cautioning individuals subject to potential harm from a convicted sex offender residing in the area. Thus, this Court concludes that the provisions of the Act do not set forth a valid claim for a violation of the *Ex Post Facto* Clause. Accordingly, the Court finds that plaintiffs' complaint fails to state a violation of the *Ex Post Facto* Clause.

### Conclusion

For all of the foregoing reasons, the Court shall grant defendants' motion to dismiss in its entirety and the Court shall dismiss plaintiffs' complaint.

A Judgment consistent with this Opinion shall issue forthwith.