Richard LEVIN, Plaintiff–Appellant,

v.

Masten CHILDERS, II, Medicaid Commissioner and Secretary of the Cabinet for Human Resources, Commonwealth of Kentucky, Defendant–Appellee.

No. 95–6542.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 16, 1996.

Decided Nov. 20, 1996.

Thomas E. Clay (argued and briefed), Louisville, KY, for Plaintiff–Appellant.

Byron E. Leet (argued and briefed), Jean Winfield Bird, Wyatt, Tarrant & Combs, Louisville, KY, for Defendant–Appellee.

Before: LIVELY and NELSON, Circuit Judges; HACKETT, District Judge.*

PER CURIAM.

This is an appeal from an order in which a civil rights action was dismissed under Rule 12(b)(6), Fed.R.Civ.P. The plaintiff, Richard Levin, M.D., claimed that the defendant, Masten Childers, II—Medicaid Commissioner for the Commonwealth of Kentucky and Secretary of the Commonwealth's Human Resources Cabinet—violated Dr. Levin's due process rights in suspending the Doctor's Medicaid payments during an investigation of possibly fraudulent billing practices. We agree with the district court's conclusion that Dr. Levin's complaint failed to state a claim on which relief could be granted, and we shall affirm the dismissal.

## I

The complaint alleged that defendant Childers issued a press release on June 7, 1994, in which he stated that payments due Dr. Levin and two other health care providers under the state Medicaid program were being suspended pending an investigation of billing practices that might be fraudulent or abusive.[1] The complaint further alleged that Mr. Childers was required by Kentucky law to provide a hearing within 30 days after receipt of a written request therefor; that such a request was made by letter dated June 15 and redelivered on June 30, 1994; that by letter of August 2, 1994, Dr. Levin requested that the suspension be lifted for failure to conduct the required hearing; and that Mr. Childers notified Dr. Levin on August 24, 1994, that the suspension had been

lifted. (It is uncontested that all payments withheld pending the investigation were released at that time.) The complaint's recitation of the facts was followed by a claim that "[t]he actions of the defendant have denied the plaintiff due process of law as guaranteed by the United States Constitution, Amendment Five and Amendment Fourteen (Due Process)."

Mr. Childers moved to dismiss the complaint pursuant to Rules 12(b)(1) and (6), Fed.R.Civ.P., contending (1) that the claims made against him in his official capacity were barred by the Eleventh Amendment, and (2) that no claim had been stated against him in his individual capacity. In connection with the latter proposition Mr. Childers submitted that he was protected by qualified immunity.

Dr. Levin filed a response asserting that he had a cause of action to enforce the regulation (42 C.F.R. § 455.23(a)) separate and apart from any due process claim. The complaint was not formally amended to add the non-constitutional claim, but defendant Childers was clearly put on notice that such a claim was being asserted.

The district court granted the motion to dismiss. Dr. Levin does not challenge the court's ruling on the official capacity claims, but he appeals from the dismissal of the claims asserted against Mr. Childers in his individual capacity.

## II

■ Section 1 of the Fourteenth Amendment prohibits a state from depriving any person of life, liberty, or property without due process of law. To state a due process claim, accordingly, a plaintiff must assert (1) a deprivation, (2) of life, liberty, or property, (3) under color of state law, (4) without due process of law. See *Brotherton v. Cleveland*, 923 F.2d 477, 479 (6th Cir.1991).

---

* The Honorable Barbara Hackett, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. A state Medicaid agency is allowed to suspend provider payments "upon receipt of reliable evidence that the circumstances giving rise to the need for a withholding of payments involve fraud or willful misrepresentation under the Medicaid program." 42 C.F.R. § 455.23(a). The regulation provides that payments may be suspended "without first notifying the provider," but specifies that the "provider may request, and must be granted, administrative review where State law so requires." *Id.*

■ Dr. Levin alleged that defendant Childers violated the Due Process Clause by failing to provide a post-suspension hearing as required by 42 C.F.R. § 455.23(a). That section, as noted above, calls for such a hearing when state law requires one.[2] But "[s]tate-created procedural rights that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory." *Tony L. v. Childers*, 71 F.3d 1182, 1185 (6th Cir.1995), *cert. denied,* ——— U.S. ———, 116 S.Ct. 1834, 134 L.Ed.2d 938 (1996).

■ The creation of procedural rights does not *ipso facto* create any property interest. See *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 34 (6th Cir.1992) (" '[N]o property interest exists in a procedure itself, without more' ") (quoting *Curtis Ambulance of Florida, Inc. v. Board of County Comm'rs*, 811 F.2d 1371, 1377 (10th Cir.1987)). As the Supreme Court stated in *Olim v. Wakinekona*, 461 U.S. 238, 250, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983), "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." And "an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Id.* at 250 n. 12, 103 S.Ct. at 1748 n. 12.

In *Procopio v. Johnson*, 994 F.2d 325 (7th Cir.1993), the plaintiff asserted a claim under 42 U.S.C. § 1983 for an alleged violation of the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. § 675(5)(C), a statute that "assures each foster child under state supervision 'a dispositional hearing to be held ... no later than eighteen months after the original placement.' " *Procopio*, 994 F.2d at 330 (quoting 42 U.S.C. § 675(5)(C)). The court rejected the notion that this statute could be "itself the source of a liberty interest the deprivation of which requires due

process," noting that there is a "fundamental logical flaw in viewing the process as a substantive end in itself." *Id.* at 332. The court explained the flaw thus:

> " 'If a right to a hearing is a liberty interest, and if due process accords the right to a hearing, then one has interpreted the Fourteenth Amendment to mean that the state may not deprive a person of a hearing without providing him with a hearing. *Reductio ad absurdum.*' " *Id.* (quoting *Shango v. Jurich*, 681 F.2d 1091, 1101 (7th Cir.1982)).

We are satisfied that the procedural rights claimed by Dr. Levin under 42 C.F.R. § 455.23 and the Kentucky Medicaid regulation did not create a liberty or property interest protected by the Due Process Clause of the Constitution.

### III

Dr. Levin advances two theories as to why the district court should have denied the motion to dismiss even if the regulations, standing alone, did not give rise to a constitutionally protected interest. First, he contends, the facts alleged in his complaint would support a claim of "[i]nfliction of a stigma to reputation accompanied by an official sanction regarding a person's employment or profession." We shall refer to this as the "stigma-plus" theory. Second, he contends, § 1983 may be used to enforce not only constitutional rights, but rights defined by federal statute or regulation as well.

■ The "stigma-plus" argument is being raised for the first time on appeal. Neither the complaint nor the response to the motion to dismiss asserted that the press release was defamatory. "[I]t is not proper to assume the plaintiff could prove facts he had not alleged or that the defendants had violated applicable laws in ways that had not been alleged." *Cline v. Rogers*, 87 F.3d 176, 184 (6th Cir.1996) (internal quotation marks and

---

**2.** Dr. Levin cites a Kentucky Medicaid regulation, 907 K.A.R. 1:009E, in support of the proposition that Kentucky law required a post-suspension hearing here. This regulation incorporates the Kentucky Physician Services Manual, which provides for an evidentiary hearing, upon request, following the termination or suspension of

a "provider agreement." For purposes of analysis we shall assume, without so deciding, that the intent of the manual was to provide for a hearing following the suspension of provider *payments* with or without a suspension of the provider *agreement*.

alterations omitted), *cert. denied*, ——— U.S. ———, 117 S.Ct. 510, 136 L.Ed.2d 400 (1996). A plaintiff will be found to have waived a particular legal theory if he "fail[s] to mention it to the district court when the time … come[s] in the proceedings below to present legal arguments linking the claims described in the complaint to the relevant statutory (or other) sources for relief." *Teumer v. General Motors Corp.*, 34 F.3d 542, 545–46 (7th Cir.1994). Dr. Levin waived his "stigma-plus" claim by failing to mention it when he should have done.

Dr. Levin's second theory rests on *Loschiavo v. City of Dearborn*, 33 F.3d 548 (6th Cir.1994), *cert. denied*, ——— U.S. ———, 115 S.Ct. 1099, 130 L.Ed.2d 1067 (1995), which holds that "plaintiffs may use Section 1983 to enforce not only constitutional rights, but also those rights defined by federal statutes [and federal regulations]." *Id.* at 551. The potential availability of § 1983 for such a use depends not only on whether a violation of federal law has occurred, but on whether the statute or regulation in question "created enforceable rights, privileges, or immunities within the meaning of § 1983." *Suter v. Artist M.*, 503 U.S. 347, 357, 112 S.Ct. 1360, 1367, 118 L.Ed.2d 1 (1992) (internal quotation marks omitted).

■ This court applies a three part test to determine whether a federal statute or regulation creates rights enforceable under § 1983:

"(1) Was the provision in question intended to benefit the plaintiff?

(2) Does the statutory provision in question create binding obligations on the defendant governmental unit, rather than merely expressing a congressional preference? and

(3) Is the interest the plaintiff asserts specific enough to be enforced judicially, rather than being 'vague and amorphous'?" *Wood v. Tompkins*, 33 F.3d 600, 604–05 (6th Cir.1994).

We need not decide whether this test is satisfied by whatever hearing requirement 42 C.F.R. § 455.23(a) may have imposed here, because we believe that Mr. Childers is entitled to qualified immunity in any event.

■ Qualified immunity protects government officials against suit for the performance of discretionary functions so long as the conduct in question " 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Veney v. Hogan*, 70 F.3d 917, 920 (6th Cir.1995) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). As stated above, 42 C.F.R. § 455.23(a) provides that a post-suspension hearing shall be accorded a Medicaid provider whose payments have been suspended if state law requires such a hearing. And as explained in footnote 2, *supra*, Kentucky law provides for a hearing when a "provider agreement" has been suspended. It is not clearly established, in our view, that a suspension of payments under 42 C.F.R. § 455.23(a) constitutes a suspension of the "provider agreement."

Significant doubt exists on this score for at least two reasons. First, the temporary and limited nature of a payment suspension under 42 C.F.R. § 455.23(a) suggests that a provider agreement remains in force during the suspension. The suspension of payments under § 455.23(a) is only for "a temporary period," see 42 C.F.R. § 455.23(b)(2), and must cease when the "authorities determine that there is insufficient evidence of fraud or willful misrepresentation" or when legal proceedings related to the alleged fraud or misrepresentation are completed. See 42 C.F.R. § 455.23(c).

Second, the passage in the Kentucky Physician Services Manual that deals with the termination or suspension of the provider agreement appears to mesh not with the federal regulations covering the temporary withholding of Medicaid payments during an investigation, but with the federal regulations covering the exclusion of individuals and entities from participating in the Medicaid program at all. The latter regulations are codified at 42 C.F.R. §§ 1002.1 *et seq.*, in a part of Title 42 separate and distinct from the part in which § 455.23 is contained. A reasonable person in Mr. Childers' position might very well have read the Physician Services Manual as pertaining to the exclusion of an individual under procedures put in place

pursuant to 42 C.F.R. § 1002.210, which reads as follows:

"The State agency must have administrative procedures in place that enable it to exclude an individual or entity for any reason for which the Secretary could exclude such individual or entity under parts 1001 or 1003 of this chapter. The period of such exclusion is at the discretion of the State agency."

Dr. Levin does not appear to have been excluded under the procedures mandated by § 1002.210.

We venture no definitive opinion as to the proper interpretation of the morass of federal and state regulations at issue here. It suffices to say that the interpretation advanced by Dr. Levin was by no means "clearly established" at the time of the brief suspension of Levin's Medicaid payments. The situation presented here strikes us as precisely the sort of situation where the doctrine of qualified immunity ought to be applied.

■ Finally, Dr. Levin contends that qualified immunity is not a proper subject for dismissal on a 12(b) motion. A definitive response to this argument is found in *Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir. 1987):

"[B]efore filing a formal affirmative defense in his answer, the defendant could properly challenge the sufficiency of the complaint under F.R.C.P. 12(b)(6) on the basis that he was entitled to a qualified immunity because the facts pleaded would not show that his conduct violated clearly established law of which a reasonable person should have known at the time."

**AFFIRMED.**