Daniel **FULLMER**, Plaintiff,

v.

**MICHIGAN DEPARTMENT OF STATE POLICE and Lt. Col. Stephen Madden, in his Official capacity as director. Defendants.**

No. 01–73319.

United States District Court,
E.D. Michigan,
Southern Division.

June 3, 2002.

Thomas Lazar, Bingham Farms, MI, for plaintiff.

Margaret A. Nelson, Mich. Dept. of Atty. Gene., Lansing, MI, for defendants.

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ROBERTS, District Judge.

### I. INTRODUCTION

This matter is before the Court on the latest challenge to the Michigan Sex Offenders Registration Act, MCLA § 28.721 et seq, ("SORA"). Plaintiff, an individual convicted of an offense that requires registration as a "sexual offender" pursuant to the SORA, argues that the statute violates constitutionally protected procedural due process.

Defendants are the Michigan State Police, the government entity charged with maintaining the registry, and Colonel Michael D. Robinson (the "Director"), in his official capacity as Director of the department.[1] Defendants contend that Plaintiff's liberty interests are not implicated by the required registration and the public dissemination of registry information; therefore, no procedural due process safeguards are mandated. Further, Defendants assert that the issues raised by Plaintiff have all been considered and decided by other courts in this district and circuit, or that the outcome can reasonably be predicted against him based on these prior rulings.

---

1. On February 21, 2002, Lt. Colonel Stephen D. Madden replaced Colonel Michael D. Robinson as Director of the Michigan State Police. Pursuant to Fed.R.Civ.P. 25(d)(1), Lt. Col. Madden is automatically substituted as Defendant.

■ While these prior decisions have upheld the notification provisions of the SORA against due process challenges, none addressed the specific argument made by Plaintiff here: namely, that the reputation damage resulting from registration as a sex offender, coupled with the ongoing legal obligations of registration and the attendant criminal penalties for failure to fulfill the obligations of registration, alter the registrant's legal status, and, therefore, the "stigma plus" test is met and his right to be free from government defamation entitles him to the procedural safeguards under the Due Process clause of the Fourteenth Amendment.[2]

The Court finds that the Plaintiff has sufficiently demonstrated a liberty interest recognized by the United States Constitution which is deserving of minimal due process protection, because of the damage to reputation as a labeled sex offender, coupled with the burden and duty of continuing registration obligations over a course of years. Because the SORA does not provide notice to registrants or an opportunity to be heard, it is struck down as an unconstitutional denial of due process afforded under the Fourteenth Amendment to the United States Constitution.

## II. *BACKGROUND*

In 1994 Congress enacted, and the President signed, the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, Pub.L. No. 103–322, 108 Stat. 1796, 2038 (codified at 42 U.S.C. § 14071). The stated objective of the Act was "to assist law enforcement and protect the public from convicted child molesters and violent sex offenders through requirements of registration and appropriate release of registration information." 64 Fed.Reg. 572, 575 (1999). The law conditions the availability of federal Byrne grants upon the creation of state sex offender registration programs. *See* 42 U.S.C. § 14071(f)(2)(A). It required the registration of persons convicted of offenses listed in the statute, defined as offenses which include "criminal offenses against a victim who is a minor" and "sexually violent offenses." 42 U.S.C. § 14071(a)(1). States were given three years from September 1, 1994, to comply. *See* 42 U.S.C. § 14071(f)(1).

The original version of the law required that the information compiled by states was to be treated as private, except that:

A. such information could be disclosed to law enforcement agencies for law enforcement purposes;

B. such information could be disclosed to government agencies conducting confidential background checks; and

C. the designated State law enforcement agency and any local law enforcement agency authorized by the State agency could disclose relevant information necessary to protect the public concerning a specific person required to register under the law, ex-

---

**2.** As will be discussed in section III.C. below, a plaintiff asserting a claim of government defamation sufficient to invoke the procedural protections of the Due Process Clause must show (1) there was an utterance of a statement about the plaintiff sufficiently derogatory to injure his or her reputation, that he or she claims is false and is capable of being proved false, and (2) that he or she has experienced a tangible and material state-imposed burden or that his or her legal status has been altered. *See Doe v. Dep't of Public Safety*, 271 F.3d 38, 47 (2nd Cir.2001), citing *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Several circuits have adopted this as the "stigma plus" test. *Id.*, citing *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1302 (11th Cir.2001); *Cutshall v. Sundquist*, 193 F.3d 466, 479 (6th Cir.1999); and *WMX Techs., Inc. v. Miller*, 197 F.3d 367, 376 (9th Cir.1999).

cept that the identify of a victim of an offense covered by the law could not be released.

*See* 42 U.S.C. § 14071(d). In 1996, Congress amended the law to provide that registry information may be disclosed for any permissible state law purpose, and that information shall be released when necessary to protect the public. In addition, the reference indicating that the information was considered private was removed. *See* 42 U.S.C. § 14071(d) (amended 1996).

Michigan adopted its version of "Megan's Law"[3] in 1994, Public Act.1994, No. 295, Eff. Oct 1, 1995. The original version of the Act required registration of certain categories of sex offenders and gave law enforcement officials some discretion to conduct community notification. Subsequent amendments of the Act expanded categories of offenders required to register and eliminated restrictions on public access to registration information. In 1999, Public Act 1999, No. 85, Eff. Sept. 1, 1999, was enacted, again expanding the categories of offenses requiring registration. In addition, it required that information on all registrants be made publicly available, including through the internet. The registry does not compile information and classify offenders based on their dangerousness to the community. Rather, all offenders who commit a listed offense are included.[4] The Act does not provide any means by which individuals required to register can contest the listing of their information in the Registry.

The Registry's information is provided to the public through the Department of State Police Sex Offender Registry website, *www.mipsor.state.mi.us.* Anyone with internet access can search the database of registered persons either by zip code, or by name. The name, sex, height, weight, race, eye color, date of birth, address, offense, and any known aliases of registered offenders are accessible by either method.

On August 29, 2001, Plaintiff filed a complaint for declaratory and injunctive relief. He requests that the Court declare SORA's registration and public disclosure scheme an unconstitutional deprivation of his rights as guaranteed by the Due Process Clause of the Fourteenth Amendment. On January 16, 2002, Plaintiff filed the motion for summary judgment now under consideration.

## III. ANALYSIS

### A. The Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995).

### B. Eleventh Amendment Immunity

The Defendants maintain that Plaintiff's suit against the Michigan State Police is barred by the Eleventh Amendment, since its immunity from suit has neither been waived nor abrogated. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S.

---

**3.** The initiative for sex offender registration and notification systems was triggered in large part by the sexual assault and murder of Megan Kanka, a seven year old girl in New Jersey. She was murdered by an individual living across the street from her who had been previously convicted of sex crimes involving young girls. *Plain. MSJ,* fn. 1.

**4.** This is called an "offense-based" registry. Several states have adopted "offender-based" registries, where offenders are classified based on their perceived likelihood to commit future crimes. The registration and notification requirements of different classes of offenders tend to vary based on their perceived danger to the community.

89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). The Court agrees.

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state.

U.S. Const. Amend. XI.

"[I]n the absence of consent, a suit in which the State or one of its departments or agencies is named as a defendant is proscribed by the Eleventh Amendment," *Pennhurst*, 465 U.S. at 100, 104 S.Ct at 908, "unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309–10, 105 L.Ed.2d 45 (1989). This immunity applies without regard to whether the suit is for declaratory, injunctive or monetary relief. *See Akella v. Michigan Dep't. of State Police*, 67 F.Supp.2d 716, 722 (E.D.Mich.1999), citing *Thiokol Corp. v. Department of Treasury*, 987 F.2d 376, 381 (6th Cir.1993). Plaintiff did not respond to this argument, and the record here is devoid of evidence that Michigan has consented to this action or that Congress has expressly overridden it. For these reasons, the action against Defendant Michigan Department of State Police is barred by the Eleventh Amendment and is dismissed. *See Akella*, 67 F.Supp.2d at 722 (dismissing action against Michigan Department of State Police where plaintiff failed to identify any facts that immunity had been either waived or overridden by Congress).

The Director does not argue that this action brought against him in his official capacity, is barred by the Eleventh Amendment. In any event, it is clear that an action such as this for declaratory and injunctive relief can be maintained against him under the doctrine of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *See Akella*, 67 F.Supp.2d at 721–724.

### C. *Procedural Due Process*

The question before the Court is whether registration and public disclosure of information under the SORA violate procedural due process. Plaintiff argues that the registration requirement stigmatizes him as a current sex offender; infringes numerous other interests; and, burdens him through a host of obligations over 25 years such that he is deprived of a liberty interest and entitled to due process under the Fourteenth Amendment. Defendant counters that this Court need not reach the due process question because Plaintiff has failed to make a sufficient showing that he has been deprived of a liberty interest. Further, Defendant contends that all issues but one have been addressed in prior decisions in the circuit. With respect to that one issue—whether the specific registration requirements constitute the alteration of registrants' legal status and thus, a "plus" factor triggering due process—Defendant asserts that under the authority of *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir.1999), the specific registration requirements of the SORA are not sufficient to give rise to a protected liberty interest compelling procedural due process. The Court agrees with the Defendant that this issue has not been addressed by the Sixth Circuit, but disagrees that *Cutshall* is determinative.

### 1. Prior Challenges

■ A procedural due process claim has two elements: (1) the existence of a consti-

tutionally protected liberty or property interest; and (2) deprivation of this interest without adequate process. *Mertik v. Blalock,* 983 F.2d 1353, 1364 (6th Cir.1993). Other courts in this circuit have rejected challenges to sex offender registries based on procedural due process. In *Doe v. Kelley,* 961 F.Supp. 1105 (W.D.Mich.1997), three individuals convicted of offenses that required them to register under the SORA sought to enjoin law enforcement officials from carrying out the notice provisions of the Act that were scheduled to go into effect under a 1997 amendment. 961 F.Supp. at 1107. The amendment expanded the notice provisions requiring that the name, address, physical description, date of birth, and nature of offense for each offender be made available for inspection upon request at any law enforcement agency within the zip code area of a registered offender. *Id.* Plaintiffs sought to enjoin the implementation of this procedure, as well as a declaratory judgment that the notice provision of the Act were unconstitutional. *Id.* Among other challenges, plaintiffs argued that the amendment violated procedural due process as well as their right to privacy. *Id.* The court rejected both arguments, holding that plaintiffs had failed to show that the amendment deprived them of any protected liberty or property interest. 961 F.Supp. at 1112. In the court's view, the amendment simply required the compilation of truthful, public information in a manner that made it readily available to the public. *Id.* Further, the court held that any damage to plaintiffs' reputations, employment relationships, or community relations was speculative and more likely flowed from their underlying offenses. *Id.* Similarly, the court rejected plaintiffs' privacy claim, finding that they had failed to demonstrate that they had a legitimate privacy interest in preventing the dissemination of truthful material already a matter of public record. *Id.* The court, therefore, found that plaintiffs had failed to establish the likelihood of success on the merits, and denied the injunction. 961 F.Supp. at 1112.

Similarly, in *Lanni v. Engler,* 994 F.Supp. 849 (E.D.Mich.1998), the court again rejected a procedural due process challenge to SORA, holding that plaintiff had failed to make a showing that the compilation of truthful, public information deprived him of a protected liberty or property interest. 994 F.Supp. at 855. Further, the court rejected plaintiff's claim that due process required that an individualized determination of dangerousness be made before any offender was listed on the registry. *Id.* Because all offenders were subject to notification under the Act, law enforcement officials had no discretion to determine what information was to be included. *Id.* Thus, the court held that a hearing would be useless. *Id.* In addition, because the information in the registry was already a matter of public record, the court held that plaintiff failed to demonstrate the existence of a legitimate privacy interest in the compilation and dissemination of truthful, public information. 994 F.Supp. at 855.

The Sixth Circuit has also addressed these issues. In *Cutshall v. Sundquist,* 193 F.3d 466 (6th Cir.1999), plaintiff, an individual convicted of aggravated sexual battery, challenged the constitutionality of the Tennessee Sex Offender Registration and Monitoring Act on several grounds, including procedural due process. 193 F.3d at 469. In the underlying case, the district court found that (1) the registration provision of the Tennessee Act did not violate the Constitution, but that (2) the release of his registry information violated plaintiff's constitutional rights. Both sides appealed. 193 F.3d at 469. On appeal, the court upheld the district court on the first issue, finding that plaintiff did not

have a protected interest in remaining free of the registry requirements. 193 F.3d at 478. Because the act involve no physical restraint and imposed no punishment, the Court held that the statute did not "implicate [plaintiff's] liberty interest in being free from punishment without due process of law." *Id.*

On the second issue, however, the court reversed, rejecting plaintiff's argument that the stigma of being labeled a sex offender under the Tennessee Act violated procedural due process. 193 F.3d at 479. The court held that under the decisions in *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) and *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), reputation alone is not a constitutionally protected liberty or property interest. *Id.* "Only where the damage to reputation is coupled with another interest, such as employment, is procedural due process triggered." *Id.* A plaintiff making this claim must show that the government action deprived him of a right previously held under state law. *See Paul,* 424 U.S. at 708, 96 S.Ct. at 1164. This has come to be known as the "stigma plus" test. *Cutshall,* 193 F.3d at 479, citing *Levin v. Childers,* 101 F.3d 44, 46 (6th Cir.1996).

The *Cutshall* court then applied the test. Plaintiff had argued that his right to employment and privacy were "plus factors" that, in conjunction with injury to reputation, were sufficient to trigger procedural due process.[5] The court rejected this argument, finding that the SORA did not limit plaintiff's ability to seek or obtain employment. *Cutshall,* 193 F.3d at 479. The court noted that the constitutional right to employment had only been recognized in the narrow context of government employment, where either state or federal

law limited the right of the government to terminate an employee. *Id.* Because plaintiff had not cited, and the court was not aware of any case law recognizing a general right to private employment, the court rejected plaintiff's argument. *Id.*

Similarly, the court rejected plaintiff's argument that the right to privacy was a sufficient "plus" factor to establish a protected liberty interest. The court noted that it could not find any authority for the existence of a privacy interest in avoiding publication of personal matters. 193 F.3d at 480. In addition, the court recognized that the Supreme Court and the Sixth Circuit had both adopted narrow views of the federal constitutional right of privacy, limiting it to those activities that are fundamental or implicit in the concept of ordered liberty. *Id.,* citing *Paul,* 424 U.S. at 712–13, 96 S.Ct. 1155; *J.P. v. DeSanti,* 653 F.2d 1080 (6th Cir.1981). Thus, the court rejected plaintiff's argument that he had a privacy right in keeping the registry information from the public. 193 F.3d at 481. Because plaintiff failed to establish a procedural due process violation, the court found that he was not entitled to any protections. 193 F.3d at 482.

The court in *Akella v. Michigan Dep't of State Police,* 67 F.Supp.2d 716 (E.D.Mich. 1999), reached a similar conclusion. As in *Cutshall,* plaintiffs alleged that the damage to their reputations, due to the stigma of being included on the registry, constituted a protected liberty interest. Applying the stigma plus analysis from *Paul v. Davis,* the court considered whether the allegations of damage to reputation, coupled with the widespread dissemination of the offenders' information made possible by the registry website, was sufficient. 67 F.Supp.2d at 728. In rejecting this claim,

---

**5.** The court did not discuss whether plaintiff's inclusion in the registry was sufficient to constitute stigma. Because the court moved on

to the "plus factors," by implication it must have accepted that the first prong of the test had been met.

the court found that even the widespread dissemination of this information failed to raise a liberty interest, because the information was in fact public. 67 F.Supp.2d at 728–29. In addition, the court found that plaintiff's rights of privacy were not violated by the release of this information. 67 F.Supp.2d at 729–30.

A careful review of these decisions, however, makes clear that this circuit has not considered whether the continuing legal obligations of person designated as sex offenders and the attendant criminal penalties for failure to comply, are a sufficient "plus" factor to alter the legal status of sex offender registrants in such a way that their constitutionally protected liberty interests are put in peril. Indeed, several circuits have found these precise arguments compelling and sufficient to satisfy the "stigma plus" test, triggering procedural due process.

### 2. Plaintiff's Complaint

The Court turns to the specific allegations of Plaintiff's Complaint.

Relevant allegations are as follows:

"4. Plaintiff, Daniel Fullmer, is not a dangerous sex offender and does not pose a threat to the safety to the community.

. . . . .

13. Registration as a "sex offender" is required solely on the basis of a conviction for one of the offenses enumerated in the statute. MCLA § 28.721 et seq.

. . . . .

15. The Department of State Police does not conduct any assessment as to whether or not an individual such as Plaintiff poses a threat to the safety of the community in order to determine whether or not that person is required to register pursuant to MCLA § 28.721 et seq.

. . . . .

### B. Duration of Sex Offender Registration Requirements.

17. Persons convicted of a single offense defined as a "criminal sexual offense" must register for 25 years after the date of initially registering. MCLA § 28.725(3).

18. Lifetime registration is required for persons convicted of a second or subsequent listed offense after October 1, 1995, regardless of when the first listed offense was committed. MCLA § 28.725(4).

. . . . .

### D. Continuing Legal Obligations of Persons Designated as Sex Offenders.

24. Persons required to register as "sexual offenders" are subject to possible felony prosecution for failure to comply with the legal obligations imposed by MCLA § 28.721(1).

25. Failure to comply with the registration provisions subjects persons required to register as "sexual offenders" to possible prosecution for a felony. MCLA § 28.729(1).

26. Persons required to register as "sexual offenders" must comply with address verification procedures for their entire registration period unless registration is suspended by the Department of State Police while the person is incarcerated, under civil commitment, or residing outside Michigan. MCLA § 28.721 et seq.

27. Persons required to register under MCLA § 28.721 et seq. must submit an address verification form annually after their initial registration dates and/or an address verification form every ninety days after initial registration dates. MCLA § 28.721 et seq.

28. Failure to return address verification forms or providing false registration information subjects registrants to possible arrest and prosecution for a felony. MCLA § 28.721. et seq.

29. All persons required to register who change their address are required to register the new address in writing with the Department of State Police within 10 days of change. MCLA § 28.721 et seq.

30. Failure to register a new address with the Michigan Department of State Police within 10 days subjects registrants to possible arrest and prosecution for a felony. MCLA § 28.721 et seq.

31. Upon information and belief, the State of Michigan does not impose registration requirements with criminal penalties on persons with criminal convictions who have completed their sentences other than persons required to register pursuant to MCLA § 28.721 et seq.

32. Upon information and belief, persons other than those required to register pursuant to MCLA § 28.721 et seq. are not subject to possible arrest and felony prosecution for failure to have a photograph taken by the Michigan Department of State Police.

33. Upon information and belief, persons other than those required to register pursuant to MCLA § 28.721 et seq., are not subject to possible arrest and felony prosecution for failure to have a photograph taken by the Michigan Department of State Police.

. . . . .

**E. Public Dissemination of Information Regarding Persons Designated as Sex Offenders.**

37. The statute, MCLA § 28.728 et seq. does not provide any standards for a court to determine when dissem-ination of registration information is or is not required for public safety.

38. The Michigan Department of State Police sex offender registry does not provide sufficient information for members of the public to determine whether any particular person who appears on the registry poses a threat to public safety.

. . . . .

**F. Community Notification Regarding Sex Offenders.**

41. The system of designating persons such as plaintiff as "sex offenders" as described above suggests to the public that Michigan law enforcement officials have determined that persons so designated pose a threat to public safety.

42. However, registration is required solely on the basis of a conviction for one of the offenses listed in the statute. Widespread dissemination of a persons [sic] designation as a "sex offender" and his identifying information occurs without any assessment of whether the person in fact poses any danger to the community.

. . . . .

**G. Irreparable Harm to Plaintiff.**

44. The defendant's enforcement of MCLA § 28.721 et seq., threatens the plaintiff with continuing irreparable injury for which there is no adequate remedy at law, including the following:

. . . . .

c. Plaintiff faces possible felony prosecution if he fails to comply with the registration or address verification requirements of MCLA § 28.721 et seq.

. . . . .

47. Plaintiff has [a] constitutionally protected liberty and property interest in not being falsely designated as [a] currently

48. dangerous sex offender who poses a threat to the public safety.

. . . . .

49. The conduct of the defendants has stigmatized the plaintiff as [a] currently dangerous sex offender without any procedure to determine whether there is any factual basis for labeling plaintiff as a threat to public safety.

50. The conduct of the defendants has deprived and threatens to deprived the plaintiff of his constitutionally protected liberty and property interests without due process of law in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution."

In short, Plaintiff's complaint alleges that the burden of his continuing obligation to register under the SORA, as well as the stigma he experiences by being listed in the registry, are sufficient to invoke procedural due process protections because he has a constitutionally protected liberty interest in not being falsely labeled as a dangerous sex offender and burdened by the legal requirements of the statute.

### a. Stigma

The stated purpose of the Michigan Department of State Police Sex Offender Registry ("PSOR") is "for the purpose of protecting the public," *www.mispor.state.mi.us.* However, registration serves this goal only if at least some of the registrants are likely to commit other sex offenses. Thus, the message conveyed by the PSOR is that at least some of the individuals in the PSOR are currently dangerous. The problem, however, is that the PSOR does not differentiate between those registrants who are currently dangerous, or likely to become dangerous again, and

those who are not likely to become dangerous again.

Plaintiff argues that the stigma associated with being falsely labeled as a danger to the community, by virtue of being included in the PSOR, constitutes government defamation of his reputation sufficient to meet the "stigma" prong of the "stigma plus" test. The holdings of other courts that have considered this issue support Plaintiff's argument. See *Doe v. Dep't of Public Safety,* 271 F.3d 38, 49 (2nd Cir.2001) ("publication of the registry implies that each person listed is more likely than the average person to be currently dangerous ... [t]his implication stigmatizes every person listed on the registry"); *Does v. Anthony Williams,* 167 F.Supp.2d at 51("it is beyond dispute that public notification pursuant to the [D.C. sex offender registry] results in stigma"). Thus, Plaintiff has sufficiently met the first prong of the "stigma plus" test. This finding is bolstered by the fact that the Michigan website, unlike the Connecticut website in *Doe v. Dep't of Public Safety,* does not contain any disclaimer informing the public that no assessment has been made regarding the risk of recidivism, or the current dangerousness, of any individual listed.

The Court in *Cutshall,* however, held that reputation alone is not a constitutionally protected liberty or property interest. Plaintiff must make an additional showing that government action has deprived him of a right previously held under state law.

### b. "Plus" Factors

Plaintiff asserts that several "plus" factors support his entitlement to procedural due process claim. Two of Plaintiff's "plus" factors, loss of employment opportunities and possibility of future physical harm, have been rejected by other courts. First, the loss of employment opportuni-

ties claim, as discussed above, has been rejected by every court in this circuit that has considered the issue. Second, the possibility of future physical harm claim was rejected by the court in *Akella.* 67 F.Supp.2d at 730–31. In *Akella,* the court declined to extend the substantive due process protections to personal security and bodily integrity as recognized in *Kallstrom v. City of Columbus,* 136 F.3d 1055 (6th Cir.1998), which involved the city's disclosure of personal information contained in police personnel files to defense counsel during trial. *Id.* The court in *Akella* distinguished *Kallstrom* on the ground that the information in the registry is already public, and that plaintiffs had failed to make any allegations that could lead the court to conclude that they faced severe bodily harm by virtue of the release of information via the registry. *Id.* The *Akella* court's reasoning on this issue is persuasive.

Plaintiff's compelling argument, however, is that obligations of registration and the attendant penalties for non-compliance with the SORA alter his legal status under state law. Several courts have found that this is a sufficient "plus" factor to establish a procedural due process violation. In *Doe v. Dep't of Public Safety,* 271 F.3d 38, 57 (2nd Cir.2001), the court found that the registration duties imposed by Connecticut's sex offender law altered the legal status of the offenders, and thus constituted a sufficient "plus" factor under the *Paul v. Davis* test. Similar to the SORA, the Connecticut Act requires that offenders update their addresses for an extended period. Based on the severity of their offense, some offenders have to update their information more frequently than others. Offenders who fail to comply with the Act are subject to criminal penalties. In addition, offenders are required to provide physical evidence to the registry, including blood samples and photographs. The court found that these requirements were extensive and onerous. More importantly, however, the court found that because offenders were obligated to comply, under penalty of law, the Act altered their legal status. 271 F.3d 38, 57. The court reached this conclusion only after thoroughly reviewing the stigma plus requirement for procedural due process as it has developed in case law. 271 F.3d at 51–53. After analyzing this history, the court held:

> a plaintiff establishes a 'plus' factor for the purposes of the *Paul v. Davis* 'stigma plus' test only if he or she points to an indicia of material government involvement unique to the government's public role that distinguishes his or her claim from a traditional state law defamation suit.

271 F.3d at 56. The Second Circuit held that the statutory registration requirements were sufficient to establish stigma plus because they altered plaintiff's legal status and were governmental in nature, thus distinguishing it from the type of suit that could be brought in state court for defamation. *Id.* The imposition of onerous duties that, if disregarded subjected plaintiff to a felony prosecution, was sufficient to constitute a change in legal status and were "quintessentially" governmental in nature. 271 F.3d at 57.

Other district courts have found the "stigma plus" requirement satisfied based on the same reasoning. See *Does v. Williams,* 167 F.Supp.2d 45, 51 (D.D.C. 2001); *Doe v. Pataki,* 3 F.Supp.2d 456, 468 (S.D.N.Y.1998). Further, as the courts in both *Anthony Williams* and *Doe v. Dep't of Public Safety* recognized, it does not appear that this argument was raised in other cases where courts have upheld the constitutionality of their sex offender registration law on procedural due process grounds. See *Does v. Anthony Williams,* 167 F.Supp.2d at 56 (noting issue not

raised in *Cutshall* ); accord *Doe v. Dep't of Public Safety*, 271 F.3d at 58.

Similarly, in his complaint (see section III.C.2, above) and in his brief in support of his Motion for Summary Judgement, Plaintiff lists several of the obligations imposed on all sex offenders under the Act: they must register with the State Police or local police in person four times a year; they must provide any information required for registration; they must report any change of residence or other change in registration information; and they must report if they are moving to another state. It is important to note that these are the standard requirements placed on all offenders; some offenders are required to update their information more frequently. . Further, any offender who knowingly violates the registration requirements is subject to fine and or imprisonment. Finally, offenders are required to fully comply with these registration requirements for at least 25 years.

■ Based on the case law cited above, the Court is persuaded that the burdens of registration and the attendant alteration of Plaintiff's legal status, are a sufficient plus factor under *Paul v. Davis*.

The cases relied upon by Defendant, while helpful in understanding the context of Plaintiff's challenge, do not address the "alteration of legal status" argument at issue here, and held to be a sufficient plus factor by other courts.

Defendant further argues that based on the analysis in *Cutshall*, Plaintiff's argument here should fail. The Court disagrees. In *Cutshall*, the court held that the registration process did not constitute a physical restraint on liberty because it was not punishment. 193 F.3d at 478. The court did not address the alteration in legal status in finding that the process itself was not a restraint on liberty. And, the argument is not that the registration process constitutes an infringement on Plaintiff's liberty interest by itself; rather, it is used to support his claim of injury to his reputation as a "plus" factor.

Finally, Defendant argues that the registration requirements of the SORA are not the basis of Plaintiff's complaint, therefore any alteration of legal status must be caused by the challenged activity, which is the dissemination of registry information. The court in *Doe v. Dep't of Public Safety* rejected a similar argument, holding that the stigma and the plus factor need not arise from a single government event. 271 F.3d at 59.

## D. The Process That Is Due

Since the Court has determined that the public notification and registration provisions of the SORA implicate liberty interests deserving due process protection, the Court must decide whether sufficient procedural safeguards are afforded registrants. *See e.g. Doe v. Pataki*, 3 F.Supp.2d 456, 468 (S.D.N.Y.1998); *Does v. Anthony Williams*, 167 F.Supp.2d 45, 58 (D.D.C.2001).

■ Due process minimally requires notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). "The Supreme Court has explained that the central meaning of procedural due process" is that " '[p]arties whose rights are to be affected are entitled to be heard; and in order to enjoy that right they must first be notified. It is equally fundamental [that these rights] must be granted at a meaningful time and in a meaningful manner.' " *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972) (quoting *Baldwin v. Hale*, 68 U.S. (1 Wall) 223, 233, 17 L.Ed. 531 (1863), and *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)).

■ Defendant here simply contends that no process is compelled or required because no deprivation of either a property or liberty interest occurs under Michigan's SORA. The Court has concluded otherwise. And, as was the case with the Connecticut SORA [as well as the SORAs in the District of Columbia, New York, and Massachusetts [6]], Michigan's SORA must be invalidated because it provides no opportunity to be heard on whether, and to what extent, public notification of sex offenders' registry information is necessary to protect the public, and the extent to which the registration requirements should burden sex offenders, when balanced against the need to protect the public.

## IV. CONCLUSION

The Court is well aware that the Michigan Legislature had in mind the laudable goal of protecting the public in enacting SORA. However, that goal can only be attained within the bounds of the Constitution. And, the constitutional question is whether the sex offender registrants have a liberty interest sufficient to warrant a certain process if they are to be deprived of their liberties. If they do, then no matter how laudable the goals of the Legislature are, there is a right to a fair procedure when the power of the government is to be used to burden and penalize citizens. This is true even when the citizens are convicted sex offenders. While it can be said that "[i]t is a fair summary of history to say that the safeguards of liberty have frequently been forged in controversies involving not very nice people," *Does v. Anthony Williams*, 167 F.Supp.2d 45, 59 (D.D.C.2001) (*quoting United States v. Rabinowitz*, 339 U.S. 56, 69, 70 S.Ct. 430, 94 L.Ed. 653 (1950) (Frankfurter, J., dissenting)), the sex offenders who must

register under the SORA, many of whom may very well pose a risk of recidivism, are still entitled to due process under the Constitution: a procedure for determining the factual basis for, and legality of, the governmental action designed to deprive them of their liberty interests. Because sex offender registrants are not afforded that, Plaintiff's motion for summary judgment is **GRANTED**; the sex offenders Registration Act is declared an unconstitutional violation of the Fourteenth Amendment to the United States Constitution.

An appropriate order will follow.

## *DECLARATORY JUDGMENT*

On June 3, 2002, the Court granted Plaintiff's Motion for Summary Judgment [Doc. # 9]. Accordingly, the Court declares that the Michigan's Sex Offenders Registration Act, MCLA § 28.721 et seq, is unconstitutional under the Fourteenth Amendment to the United States Constitution. Defendants are enjoined from further enforcement of the Sex Offenders Registration Act until they provide sex offenders adequate procedural safeguards for their constitutionally protected interests.

**IT IS SO ORDERED.**

---

6. *Does v. Anthony Williams*, 167 F.Supp.2d 45, 58–59 (D.D.C.2001) (District of Columbia); *Doe v. Pataki*, 3 F.Supp.2d 456, 473 (S.D.N.Y.1998) (New York); *Doe v. Attorney General*, 426 Mass. 136, 146, 686 N.E.2d 1007, 1014 (Mass.1997) (Massachusetts).