224 F.Supp.2d 1172 (2002)
Bruce GILMORE, Claudia McGuire, The Great Frame Up Systems, Inc., a Delaware corporation, and Pesger, Inc., an Illinois corporation, d/b/a The Great Frame Up, individually and on behalf of all others similarly situated, Plaintiffs,
v.
SOUTHWESTERN BELL MOBILE SYSTEMS, L.L.C., a Delaware limited liability company, Defendant.
No. 01 C 2900.
United States District Court, N.D. Illinois, Eastern Division.
July 25, 2002.
P. Terrence Buehler, Susman & Watkins, Chicago, IL, George N. Vurdelja, Jr., John M. Geaphy, Griwold L. Ware, Vurdelja & Heaphy, Chicago, IL, Janet Lynn Reed, Robert E. Williams, Buehler & Reed, Chicago, IL, for Bruce Gilmore.
*1173 Robert E. Williams, Buehler & Reed, Chicago, IL, for Claudia McGuire, Great Frame Up Systems, Inc.
Kenneth Emanuel Kraus, Veronica Gomez, Lisa Beth Swedenborg, Schopf & Weiss, Chicago, IL, for Southwestern Bell Mobiles Systems, Inc.

MEMORANDUM OPINION AND ORDER
HART, District Judge.
This case began as a putative class action filed by named plaintiff Bruce Gilmore in the Circuit Court of Cook County, Illinois. The basic claim was that defendant Southwestern Bell Mobile Systems, L.L.C.[1] improperly charged a "Corporate Account Administrative Fee" (the "Fee") for Gilmore's cellular telephone service and that of the putative class members who had corporate account cellular telephone service from defendant or its predecessor. The original complaint denominated its claims as being state law claims for breach of contract, statutory consumer fraud, common law fraud, and unjust enrichment. The case was removed to federal court. This court held that federal jurisdiction existed because all but the "nondisclosure fraud claims" were completely preempted by the Federal Communications Act ("FCA") and thus were instead federal claims. See Gilmore v. Southwestern Bell Mobile Systems, Inc., 156 F.Supp.2d 916 (N.D.Ill.2001) ("Gilmore I").
Gilmore thereafter amended the complaint. In the amended complaint, the claims were denominated as violations of the FCA, 47 U.S.C. §§ 201 & 202; violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/2; and common law fraud. Gilmore's subsequent motion for class certification was denied on the grounds that numerosity and the adequacy of the class representative had not been shown,[2] but the opportunity to cure deficiencies in the motion for class certification was expressly left open. See Gilmore v. Southwestern Bell Mobile Systems, L.L.C., 210 F.R.D. 212, 217-20 (N.D.Ill.2001) ("Gilmore II"). On defendant's motion to dismiss, it was held that abstention as to the FCA claims under the primary jurisdiction doctrine would not be invoked at that time. It was found that the unjust or unreasonable charge claim under § 201(b) was based on breach of contract, fraud, and deception and therefore was well within the province of the court and did not require the FCC's expertise as to appropriate rates. See id. at 221-22. As to the § 202(a) rate discrimination *1174 claim, it was found that it was unlikely to be necessary to reach the issues that would be within the FCC's expertise and therefore there was no need to refer the case to the FCC unless it later appeared that such issues should be reached. See id. at 222-23. On the merits, defendant did not present any meritorious basis for dismissing any aspect of the FCA claims. See id. at 223-25. The Consumer Fraud Act and common law fraud claims were dismissed on the ground that they were "no-services fraud claims" that were preempted by the FCA, not a type of nondisclosure fraud claim that Gilmore I had held were not preempted. See Gilmore II, 210 F.R.D. at 225-26.
Gilmore subsequently filed a new motion for class certification. This time class certification was denied on the ground that Gilmore was not an adequate or typical class representative in that a substantial question existed regarding his standing to bring the claims contained in the amended complaint. See Gilmore v. Southwestern Bell Mobile Systems, L.L.C., 2002 WL 548704 (N.D.Ill. April 8, 2002) ("Gilmore III"). The standing question revolved around when and if Gilmore's sister-in-law had properly assigned the cellular telephone service contract to Gilmore, including whether it had been assigned to him before the Fee began in 1995.
A few weeks after Gilmore III was issued, Gilmore moved to file a second amended complaint and add additional named plaintiffs. The additional named plaintiffs are Claudia McGuire, The Great Frame Up Systems, Inc., and Pesger, Inc. Over defendant's objections, leave was granted to file the second amended complaint and defendant was provided with time to answer or otherwise plead. See Minute Order dated May 1, 2002. Thereafter, defendant moved to dismiss the second amended complaint. The motion to dismiss includes argument that leave to amend should not have been granted, which essentially seeks reconsideration of the May 1 Order.
Defendant argues that leave to amend should not have been granted because Gilmore unduly delayed seeking the amendment. Defendant, however, has not shown that it was prejudiced by any delay. To the extent further discovery would be needed, it would be permitted. Moreover, most discovery should go to the question of whether the FCA was violated, not questions concerning the individual named plaintiffs. Adding additional plaintiffs would not unduly prejudice defendant. Since defendant would not be unduly prejudiced and any delay was not particularly extreme, prudential grounds did not exist for denying leave to amend. Leave to amend could still possibly have been denied on grounds of futility, but that ground is adequately considered by addressing the merits of the presently pending motion to dismiss. The May 1 Order granting leave to amend will not be vacated.
Defendant contends the case should be dismissed because Gilmore did not have standing from the beginning and that cannot be cured by substituting in a new plaintiff who has standing. See Walters v. Edgar, 163 F.3d 430, 432-33 (7th Cir.1998), cert. denied, 526 U.S. 1146, 119 S.Ct. 2022, 143 L.Ed.2d 1033 (1999). Defendant also contends the second amended complaint would fail on statute of limitations grounds, see 47 U.S.C. 415, and the voluntary payment doctrine, see Randazzo v. Harris Bank Palatine, N.A., 262 F.3d 663, 666 (7th Cir.2001).[3] Defendant also contends that the new plaintiffs may lack *1175 standing or otherwise be inadequate class representatives.[4]
First, it must be recognized that the second amended complaint does not contain all the same claims as were in the amended complaint. The amended complaint contained claims that the Fee was an unjust or unreasonable charge because it was not permitted under the parties' contract and it was deceptively or fraudulently imposed. See Gilmore II, 210 F.R.D. at 216 & n.3, 221-22. The § 201(b) claim in the amended complaint did "not directly attack the reasonableness of the rate" and contained "no contention that the overall rate is unreasonably high as compared to the overall services being provided." Id. at 222. The second amended complaint, however, is different. There is a factual allegation that "[n]either Plaintiffs' initial contracts nor their monthly bills provide any authorization for imposing the Corporate Account Administration Fee...." 2d Am.Compl. ¶ 15. There are also allegations that the Fee was imposed "with the specific intent of obtaining a higher price for its cellular services without appearing to raise its rates" and that the Fee was "misleadingly labeled" as an administrative fee when it is "really a rate increase in disguise." Id. ¶ 16. However, the § 201 and § 202 claims are delineated without reference to a breach of contract, fraud, or deception.
20. Defendant provides no goods or services for the Corporate Account Administration Fees it charges, and thus those Fees are unreasonable and unfair and in violation of 47 U.S.C. § 201(b) which requires that "All charges ... shall be just and reasonable."
21. The Corporate Account Administration Fee also violates 47 U.S.C. § 202 which prohibits "unjust or unreasonable discrimination in charges" in that Defendant only imposed the fee on corporate customers' phones and did not impose it on individual customers who received a similar level of administrative support.
2d Am.Compl. ¶¶ 20-21.
A complaint need not set forth all relevant facts or recite the law; all that is required is a short and plain statement showing that the party is entitled to relief. Fed.R.Civ.P. 8(a); Anderson v. Simon, 217 F.3d 472, 474 (7th Cir.2000), cert. denied, 531 U.S. 1073, 121 S.Ct. 765, 148 L.Ed.2d 666 (2001); Scott v. City of Chicago, 195 F.3d 950, 951 (7th Cir.1999); Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041 (7th Cir.1999). Moreover, in the complaint itself, it is unnecessary to specifically identify the legal basis for a claim as long as the facts alleged would support relief. Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir.2000); Scott, 195 F.3d at 951; Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992). Arguably, the second amended complaint could be construed as still claiming that § 201 or federal common law is violated because of a contract breach, fraud, and/or deception. However, in response to a motion to dismiss that raises the issue, a plaintiff must identify the legal basis for a claim and make adequate legal arguments in support of it. Kirksey, 168 F.3d at 1041-42; Stransky v. Cummins Engine Co., 51 F.3d 1329, 1335 (7th Cir. 1995); Levin v. Childers, 101 F.3d 44, 46 (6th Cir.1996); Carpenter v. City of Northlake, 948 F.Supp. 759, 765 (N.D.Ill.1996). In response to defendant's motion to dismiss, plaintiffs expressly state their § 201 claim does not rely on fraud, deception, or *1176 breach of contract, but instead relies only on the direct contention that the rate was unreasonable in light of the services being provided.
... In [defendant's] brief, without any citation, [defendant] casts this action as merely an attack on the 1995 decision to add the Fee without the subscriber's "authorization" or "consent." (Def.'s Mem. at 1, 5) To bolster this fantasy, it seizes on Gilmore II and tries to transform the Court's analysis into a binding ruling that only subscribers having contracts prior to institution of the Fee can claim that the Fee is unreasonable or discriminatory. (Id. at 1-2) That interpretation is contrary to the FCA and SAC [Second Amended Complaint].

Gilmore II's discussion of the elements of the FCA claims contains no reference to any requirement that a plaintiff must prove fraud, deception or reliance as elements of the FCA claims. (See Gilmore II at 14-30). The Fee is either unreasonable under § 201 or discriminatory under § 202. Neither the statutes nor the case law require proof of reliance or an omission or misrepresentation. If a corporate account was created after March of 1995, it is irrelevant if the subscriber was given different representations. The subscriber still had to pay the same Fee which was either reasonable or unreasonable and was either discriminatory or not. The burden of proof is the same regardless of when the corporate subscriber signed a contract.
Simply put, plaintiffs claim that Defendant violated §§ 201 and 202 of the FCA by billing and collecting the Fee for which it provided no corporate account administrative goods or services, much less administrative goods or services worth substantially more than those provided other cell phone subscribers. (SAC, ¶¶ 15-18) Defendant violated those statutes every time it billed and collected the Fee from any corporate subscriber, regardless of when the relationship began and regardless of what other fees or charges those subscribers did or did not pay prior to April, 1995. Likewise, it is axiomatic that each such corporate subscriber suffered damages each and every time they paid the Fee, again regardless of what happened, what they knew or were told, or what relationship, if any, they had with defendant in or prior to April, 1995.
The FCA prohibits cell phone companies from imposing unreasonable or discriminatory charges and permits victims who paid such wrongful charges to seek redress in federal court. Contrary to defendant's unsupported arguments, there is nothing in the FCA or related case law that provides a defense or limits that on the basis of (1) whether or not the charge (in this case, the Fee) was "authorized" or "consented to" by the subscriber (Def.'s Mem. at 5);9 (2) when, whether, or how the subscriber learned of the charge, or (3) whether or not the subscriber dealt with the company before the offending charge was instituted. None of these factual questions have any bearing on the sufficiency of this SAC.
9 Plaintiffs never have claimed defendant could not impose new fees, but merely that the FCA bars them from instituting fees that are unreasonable or discriminatory. If the Fee was legitimately instituted to defray special costs for administering corporate accounts, there would probably be no claim. Defendant has not raised this argument because testimony from its current and former employees is that the Fee was imposed not to defray any unique corporate administrative expenses, but to increase revenue without having to raise rates or do anything else.
Pl. Response to Def.'s Motion to Dismiss 2d Amend.Compl. at 6-7 (Docket Entry 51) (emphasis in original).
*1177 In their brief, plaintiffs also clarify that any allegation of reliance or deception is limited to being pertinent to the issues of when their claims accrued or the statute of limitations was tolled and do not go to the substance of the FCA claims. See id. at 7 n. 10, 10-12.
Having changed (or possibly clarified) the FCA claims from what was contained in the amended complaint, the analysis contained in Gilmore II does not apply equally to the second amended complaint. It is no longer true that resolution of the § 201 claim will be based on application of contract and fraud principles that are within the conventional experience of a court. Compare Gilmore II, 210 F.R.D. at 222. Unlike the § 201(b) claim in the amended complaint, which "did not directly attack the reasonableness of the rate," id., the § 201(b) claim in the second amended complaint directly raises the issue of whether the Fee was unjust or unreasonable because too high. That is an issue within the expertise of the FCC which can be referred to that agency under the primary jurisdiction doctrine. See id. at 221.
Since plaintiffs are now pursuing a § 201(b) claim that is within the expertise of the FCC, this claim should be referred to the FCC. Since the § 201(b) claim is being referred, no sufficient reason exists for not referring the § 202 claim as well. Compare id. at 223. Since the only remaining claims are § 201 and § 202 claims that the FCC should be able to fully resolve, there should be no need to return to this court. However, on the possibility that there would be some reason, the complaint will be dismissed without prejudice to moving to reinstate the case within 30 days after any related decision of the FCC becomes final.[5] All pending motions for discovery will also be denied without prejudice since, in this court, those motions are moot.
IT IS THEREFORE ORDERED that defendant's motion to dismiss the second amended complaint [50-1] is granted in part and denied in part. Plaintiffs' motions for leave to take more than ten depositions [35-1], for enlargement of time to complete discovery [35-2], and to compel discovery [40-1], are denied without prejudice. Defendant's motion to compel witness list and for protective order [43-1, 2] is denied without prejudice. Plaintiffs' complaint is dismissed without prejudice to proceeding within thirty (30) days before the Federal Communications Commission. Plaintiffs are granted leave to move to reinstate this case within thirty (30) days after any related Federal Communications Commission proceedings become final.
NOTES
[1] The original complaint misnamed defendant.
[2] The Fee that is in dispute in this case was first implemented in April 1995. In opposing the first motion for class certification, defendant contended Gilmore would not be typical of those putative class members who first became customers after the Fee was implemented. Gilmore II, 210 F.R.D. at 218-19, states: "Defendant also contends that customers were provided sales literature that informed them the Fee would be included in their rates. Such literature, however, would not have predated (except possibly shortly beforehand) the implementation of the Fee. Central to plaintiff's claims is the contention that the Fee was not authorized and then deceptively added. Customers who opened their corporate accounts after the Fee was implemented could not make such a claim, only customers like plaintiff who initially were not charged the Fee. Therefore, an appropriate class definition would limit the class to those who had a corporate account prior to implementation of the Fee and who continued to have that account at times when the Fee was charged. Recognizing that this is an appropriate limitation on the class definition, the fact that different representations were made to customers who opened their accounts after implementation does not matter because such persons would not be members of the class."
[3] Today's ruling expresses no opinion as to whether the voluntary payment doctrine applies to § 201 and/or § 202 claims. Neither is any opinion expressed as to defendant's statute of limitations argument.
[4] Whether any of the named plaintiffs would be adequate class representatives is not an issue that is pertinent to a motion to dismiss. Even if inadequate class representatives, named plaintiffs would still be permitted to pursue any meritorious claims on their own behalf.
[5] The materials presently before the court are inadequate for resolving the jurisdictional issue of standing. But even if plaintiffs were found to lack standing, the result would be the same, dismissal without prejudice. It is noted though, that, as the claims are presently constituted, the issue of when a plaintiff began or was assigned cellular service would not appear to go to the issue of standing since there is no longer any claim of fraudulent deception or breach of contract occurring when the Fee was first implemented.